# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

TODD M. LOPEZ, as Personal Representative
of the Wrongful Death Estate of Anthony
Rivera, Deceased, and ELIZABETH PRIETO-
GOMEZ,

       Plaintiffs,

vs.                                                                          No. CIV 25-0225 JB/SCY

BENITO VEGA and BRADY WELDING &
MACHINE SHOP INC.,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Plaintiffs' Motion to Remand to State

Court and Memorandum In Support Thereof, filed April 4, 2025 (Doc. 8)("Remand Motion"). The

Court held a hearing on May 9, 2025. See Clerk's Minutes at 1, filed May 9, 2025 (Doc. 25). The

primary issue is whether the Court has jurisdiction over this State-law case pursuant to 28 U.S.C.

§ 13332(c)(2)'s rule assigning a decedent's citizenship to the "legal representative of the estate of

a decedent," § 1332(c)(2), when: (i) Plaintiff Todd Lopez, Anthony Rivera's personal

representative under the New Mexico Wrongful Death Act, N.M.S.A. §§ 41-2-1 to  41-2-4, is a

citizen of New Mexico: (ii) Rivera, whose death underlies this suit's claims, was a Texas resident;

(iii) Defendant Benito Vega is a Texas citizen; and (iv) Defendant Brady Welding & Machine

Shop, Inc. ("Brady Welding") is an Oklahoma citizen. See Notice of Removal at 3, filed March

4, 2025 (Doc. 1)("Removal Notice"). After reviewing the relevant law and applicable facts, the

Court concludes that 28 U.S.C. § 1332(c)(2)'s citizenship-imputing rule does not apply to Lopez,

because Lopez does not represent the decedent's estate in this case. Accordingly, the Court denies

the Remand Motion.

**FINDINGS OF FACT**

Before discussing this case's procedural history, the Court provides a brief factual background. The Court takes its facts largely from the Complaint for Wrongful Death, filed October 3, 2024, County of Santa Fe, First Judicial District, State of New Mexico, removed March 4, 2025, to federal court (Doc. 1-1)("Complaint"). Accordingly, the facts largely reflect the Plaintiffs' version of the case.

1.      On February 25, 2024, Rivera drives northbound on Highway 285 in Eddy County, New Mexico. See Complaint ¶ 10, at 2.

2.      As Rivera drives northbound, Vega, who is driving a 2013 Kenworth truck and tanker westbound on State Road 31 approaching US 285, takes a left turn onto US 285 and hits Rivera's car. See Complaint ¶ 10, at 2.

3.      Rivera dies from his injuries. See Complaint ¶ 10, at 2.

4.      Brady Welding employs Vega when Vega collides with Rivera. See Complaint ¶ 14, at 2.

5.      Rivera was a resident of Texas. See Complaint ¶ 3, at 1.

6.      Vega is a resident of Texas. See Complaint ¶ 4, at 1.

7.      Brady Welding is a citizen of Oklahoma. See Complaint ¶ 6, at 1.

8.      Lopez, Rivera's personal representative under the New Mexico Wrongful Death Act, is a citizen of New Mexico. See Complaint ¶ 2, at 1.

9.      Prieto-Gomez, Rivera's mother, is a citizen of Mexico. See Plaintiffs' Disclosure Statement Under Fed. R. Civ. P. 7.1(a)(2)(A) at 1, filed May 8, 2025 (Doc. 24).

## PROCEDURAL BACKGROUND

In the Procedural Background section, the Court first describes the Complaint and the Removal Notice.  Then, it summarizes the Remand Motion and the associated briefs.  Finally, it summarizes the hearing on the Remand Motion.

1.     **The State Court Complaint and the Removal Notice.**

The Plaintiffs file their Complaint in the County of Santa Fe, First Judicial District, State of New Mexico on October 3, 2024.  Complaint at 1.  The Complaint alleges that Lopez is a citizen of New Mexico, Rivera was a "resident" of Texas, Vega is a resident of Texas, and Brady Welding is an Oklahoma corporation.  Complaint ¶¶ 2-6, at 1.  That same day, the First Judicial District Court enters an Order Appointing Todd M. Lopez as Personal Representative of the Wrongful Death Estate of Anthony J. Rivera (filed October 3, 2024, County of Santa Fe, First Judicial District, State of New Mexico)(filed April 3, 2025, in federal court)(Doc. 8-1)("Personal Representative Order"), "pursuant to NMSA 1978 § 41-2-3 et seq."  Personal Representative Order at 1.  The Complaint brings a negligence claim against Vega, a respondeat superior claim against Brady Welding, and a direct negligence claim against Brady Welding.  See Complaint ¶¶ 12-18, at 2-3.

On March 4, 2025, Brady Welding files the Removal Notice, which asserts that the Court has the power to hear the case under the diversity jurisdiction statute, 28 U.S.C. § 1332(a).  See Removal Notice at 2.  According to the Removal Notice, Lopez is a citizen of New Mexico, Rivera "was . . . a citizen and resident of El Paso County, Texas, . . . Plaintiff Elizabeth Prieto-Gomez is . . . neither[] a citizen nor resident of any state within the United States of America at the time the Complaint was filed," and Vega is a citizen of Texas.  Removal Notice at 2.  The Removal Notice

also contends that the amount in controversy exceeds $75,000.00.  See Removal Notice at 3.

    **2.**    **The Remand Motion.**

The Remand Motion contends that complete diversity does not exist in this case and that the Court should remand the case to State court, because Vega is a Texas citizen, Rivera is a Texas citizen, and Lopez, the personal-representative Plaintiff, shares Rivera's citizenship pursuant to 28 U.S.C § 1332(c).  See Remand Motion at 3.  According to the Remand Motion, the removing party has the burden to show that complete diversity exists and, thus, that the Court has jurisdiction.  See Remand Motion at 4.  The Plaintiffs argue that § 1332(c)(2) imputes Rivera's citizenship to Lopez, because § 1332(c) states that "'the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent.'"  Remand Motion at 6 (quoting 28 U.S.C. § 1332(c)(2)).  The Plaintiffs assert that, in actions brought under the New Mexico Wrongful Death Act, N.M.S.A. § 41-2-3 ("Wrongful Death Act"), "a personal representative 'constitutes a "legal representative of the estate" within the meaning of § 1332(c)(2).'"  Remand Motion at 7 (quoting Brown v. Mahdi, 482 F. Supp. 2d 1300, 1305 (D.N.M. 2007)(Johnson, J.)).  Accordingly, the Plaintiffs contend that complete diversity does not exist, because Lopez takes Rivera's Texas citizenship, and Vega is a Texas citizen, too.  See Remand Motion at 7-9.

    **3.**    **The Remand Response.**

In the Defendants' Response In Opposition to Plaintiff's Motion to Remand, filed April 17, 2025 (Doc. 14)("Remand Response"), the Defendants argue that the Complaint alleges that Rivera was a resident of Texas and does not allege that Rivera was a citizen of Texas.  See Remand Response at 2.  According to the Defendants, "allegations of residency are 'not enough' to establish citizenship," and the Complaint "establishes only that Lopez is a 'citizen' of New Mexico."

- 4 -

Remand Motion at 3 (quoting <u>Siloam Spring Hotel LLC v. Century Sur. Co.</u>, 781 F.2d 1233, 1238 (10th Cir. 2015)).  The Defendants argue that, "[a]lthough a person's place of residence <u>may</u> <u>be</u> prima facie evidence of his/her citizenship, an allegation of residence must be supported by facts, not conclusions."  Remand Motion at 5 (citing <u>Harris v. Estrada</u>, No. CIV 25-0053 KK-KRS, 2025 WL 671852, at *1 (D.N.M. March 3, 2025)(Sweazea, M.J.))(emphasis in Remand Response).  Thus, the Defendants argue that the Plaintiffs have "failed to establish a lack of diversity in this case."  Remand Response at 7.

### 4.    <u>The Remand Reply.</u>

In the Plaintiffs' Reply to Defendants' Response in Opposition to Motion to Remand to State Court and Memorandum In Support Thereof, filed May 1, 2025 (Doc. 17)("Remand Reply"), the Plaintiffs first contend that the Defendants' have the burden, as the removing party, to convince the Court that it has subject-mater jurisdiction.  <u>See</u> Remand Reply at 2.  The Plaintiffs assert that the Defendants, as the party invoking federal jurisdiction, have the burden of "'proving its existence by a preponderance of the evidence.'"  Remand Reply at 2 (quoting <u>Middleton v.</u> <u>Stephenson</u>, 749 F.3d 1197, 1200 (10th Cir. 2014)).  The Plaintiffs argue that, because the Plaintiffs have never asserted that diversity jurisdiction exists, they are not required to allege Rivera's citizenship in their State court Complaint.  <u>See</u> Remand Reply at 3.  They contend, however, that, because the Complaint describes Rivera as a Texas resident, a person's residency is prima facie evidence of their citizenship, and the Defendants have not rebutted this showing. <u>See</u> Remand Reply at 4.

Second, the Plaintiffs maintain that the Defendants' Removal Notice states that Rivera "was a 'citizen and resident of El Paso County, Texas.'"  Remand Reply at 4 (quoting Removal

Notice at 1).  The Plaintiffs contend that the Defendants have, thus, "judicially admitted Mr. Rivera's Texas citizenship, thus defeating complete diversity."  Remand Reply at 4.  The Plaintiffs acknowledge that the Remand Response characterizes the Defendants' assertion that Rivera is a Texas citizen as an "error," but the Plaintiffs highlight that the Defendants have not "sought leave of this Court to amend their" Removal Notice.  Remand Reply at 5.  The Plaintiffs also highlight that the Defendants have not requested jurisdictional discovery; according to the Plaintiffs, this is significant, because it is "'improper for a party to first remove and only then seek to develop facts showing that federal subject matter jurisdiction exists.'"  Remand Reply at 5-6 (quoting Posen v. Malkerson, Gilliland & Martin, LLP, No. CIV 05-1819-REB-MJW, 2006 U.S. DIST LEXIS 958, at *5-6 (D. Colo. Jan 5, 2006)(Blackburn, J.)).  The Plaintiffs also argue that, if they amend their Complaint to allege that Rivera is a Texas citizen, the Court would not have jurisdiction in this case, see Remand Reply at 7; they contend that this position finds support in Royal Canin U.S.A., Inc. v. Wullschleger, No. 23-677, 604 U.S. -- (2025), which "reaffirms that a Plaintiff's post-removal amendment of his complaint can destroy federal subject matter jurisdiction."  Remand Reply at 9.  Finally, the Plaintiffs contend that (i) Lopez' rights "in this matter are merely derivative of" Rivera's rights; and (ii) the Defendants were required to, but did not, "plead and prove that Anthony Rivera was a citizen or domiciliary of some state other than Texas or Oklahoma."  Remand Reply at 9 (emphasis in original).  See Remand Reply at 12.

    **5.    The Hearing.**

At the hearing, the Plaintiffs reiterate that, "based on the pleadings alone, based on the judicial admissions alone made by defendants, this Court simply doesn't have jurisdiction."  Draft

Transcript at 4:11-13 (taken May 9, 2025)(Standridge)("Tr.").[1]  The Plaintiffs maintain that, although the Defendants have the burden to plead and prove federal jurisdiction, "they didn't even plead it in the first instance, in their notice of removal."  Tr. at 511-16 (Standridge).  The Plaintiffs also query why the Defendants have not moved to amend the Removal notice, "as Section 1653 allows."  Tr. at 6:1-4 (Standridge).

Next, the Plaintiffs address the Supreme Court of New Mexico's recent decision in Lopez v. Presbyterian Healthcare Services, No. S-1-SC-4016, 2025 WL 1260606 (N.M. May 1, 2025)(slip op.)("Lopez"), and how that decision interacts with the United States Court of Appeals for the Tenth Circuit's opinion, Tank v. Chronister, 160 F.3d 597 (10th Cir. 1998)("Tank").  According to the Plaintiffs, Lopez is about "whether you have to have a personal representative formally appointed . . . prior to filing the substantive lawsuit.  And the State Supreme Court said: No."  Tr. at 6:22-7:2 (Standridge).  The Plaintiffs maintain that Lopez describes the Wrongful Death Act as a "hybrid," in which the decedent's estate can bring the suit on the decedent's behalf and "where the beneficiaries, the heirs can then also make their claims for damages individual to them."  Tr. at 8:1-10 (Standridge).

Subsequently, the Court asks the Defendants how the Supreme Court of New Mexico's "characterization" of the Wrongful Death Act "impacts the jurisdictional issues."  Tr. 11:7-12 (Court).  The Defendants explain that, in Tank, the Tenth Circuit holds that "not every appointment of a personal representative under every wrongful death act is going to be treated as if the residency or the citizenship of the estate -- the party before the Court -- is derived from the citizenship of the

---

[1]The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited versions.  Any final transcript may contain slightly different page and/or line numbers.

decedent." Tr. at 12:8-14 (Riley). The Defendants state that they "don't know exactly what to do" with some of the claims, because Rivera's mother is a named Plaintiff and is also seeking wrongful death benefits. Tr. at 13:8-19 (Riley). The Defendants assert that the Court "has an interest . . . to also preclude a situation where the personal representative, and, therefore, the citizenship of the decedent is being used to destroy jurisdiction." Tr. at 15:9-14 (Riley). The Defendants ask the Court for leave to file an amended notice of removal. See Tr. at 15:25-16:1 (Riley). When the Court asks the Defendants whether the circumstances in Tank[2] are present here, the Defendants answer: "Don't know." Tr. at 17:11-18 (Court, Riley).

The Court asks the same question to the Plaintiffs, and the Plaintiffs respond that, in Tank,

> a wrongful death act was brought by a personal representative on behalf of the heirs, so not the estate. That's the crucial difference; here we have a claim by the personal representative. Only the personal representative is . . . the representative of the estate. Ms. Prieto Gomez, beneficiary, is herself an individual plaintiff because, as the Court pointed out, she's got a loss of consortium claim that's individual to her.

> And I'm reading from Tank v. Chronister. And just for purposes of the record, that's 160 F.3d 597. I am looking at page 600, where the Tenth Circuit said, "An oddity of Kansas law precludes a wrongful death suit from being pursued by or on behalf of the estate." Tha''s the only exception that can remove the application of Section 1332(c)(2). We don't have that in New Mexico.

Tr. at 20:3-22 (Standridge). The Plaintiffs add that "this Court just doesn't have jurisdiction under the pleadings as they stand or as the pleadings could be amended." Tr. at 23:22-24:1 (Standridge).

## LAW REGARDING DIVERSITY JURISDICTION

Subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1) requires: (i) complete diversity

---

[2]In Tank, the Tenth Circuit affirms the district court's denial of a motion to dismiss and concludes that diversity jurisdiction exists, because "an individual bringing a wrongful death action under" Kansas law "is not the 'legal representative of the estate of a decedent' under § 1332(c)(2), and is therefore not deemed to be a resident of the same state as the decedent for diversity" jurisdiction purposes. Tank, 160 F.3d at 601.

among the parties; and (ii) that "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). Previously, the Court explains that "[t]he Supreme Court of the United States has described [the] statutory diversity requirement [in 28 U.S.C. § 1332(a)] as 'complete diversity,' and it is present only when no party on one side of a dispute shares citizenship with any party on the other side of a dispute." McEntire v. Kmart Corp., No. CIV 09-0567 JB/LAM, 2010 WL 553443, at *3 (D.N.M. 2010)(Browning, J.)(citing Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267, 267-68 (1806), overruled in part by Louisville & N. R. Co. v. Mottley, 211 U.S. 149 (1908); McPhail v. Deere & Co., 529 F.3d 947, 951 (10th Cir. 2008)). The amount-in-controversy requirement is an "estimate of the amount that will be put at issue in the course of the litigation." Valdez v. Metro. Prop. & Cas. Ins. Co., 867 F. Supp. 2d 1143, 1163 (D.N.M. 2012)(Browning, J.)(citing McPhail v. Deere & Co., 529 F.3d at 956). The Court discusses the two requirements in turn.

### 1.    Diversity of Citizenship.

For diversity jurisdiction purposes, a person's domicile determines citizenship. See Crowley v. Glaze, 710 F.2d 676, 678 (10th Cir. 1983). "A person's domicile is defined as the place in which the party has a residence in fact and an intent to remain indefinitely, as of the time of the filing of the lawsuit." McEntire v. Kmart Corp., No. CIV 09-0567 JB/LAM, 2010 WL 553443, at *3 (citing Crowley v. Glaze, 710 F.2d at 678). See Freeport-McMoRan, Inc. v. KN Energy, Inc., 498 U.S. 426, 428 (1991)("We have consistently held that if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events."). If neither a person's residence nor the location where the person has an intent to remain can be established, the person's domicile is that of his or her parents at the time of the person's birth. See

Gates v. Comm'r of Internal Revenue, 199 F.2d 291, 294 (10th Cir. 1952)("[T]he law assigns to every child at its birth a domicile of origin. The domicile of origin which the law attributes to an individual is the domicile of his parents. It continues until another domicile is lawfully acquired."). Additionally, "while residence and citizenship are not the same, a person's place of residence is prima facie evidence of his or her citizenship." McEntire v. Kmart Corp., 2010 WL 553443, at *3 (citing State Farm Mut. Auto. Ins. Co. v. Dyer, 19 F.3d 514, 520 (10th Cir. 1994)). A corporation, on the other hand, is "'deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business.'" Gadlin v. Sybron Int'l Corp., 222 F.3d 797, 799 (10th Cir. 2000)(quoting 28 U.S.C. § 1332(c)(1)). See World Fuel Servs., Inc. v. Nambe Pueblo Dev. Corp., 362 F. Supp. 3d 1021, 1065 (D.N.M. 2019)(Browning, J.); De La Rosa v. Reliable, Inc., 113 F. Supp. 3d 1135, 1150 (D.N.M. 2015)(Browning, J.); Ullman v. Safeway Ins. Co., 995 F. Supp. 2d 1196, 1213-14 (D.N.M. 2013)(Browning, J.).

      2.     **Amount in Controversy.**

The statutory amount-in-controversy requirement, $75,000.00, must be satisfied as between a single plaintiff and a single defendant for a federal district court to have original jurisdiction over the dispute; "a plaintiff cannot aggregate independent claims against multiple defendants to satisfy the amount-in-controversy requirement," nor can multiple plaintiffs aggregate their claims against a single defendant to exceed the threshold. Martinez v. Martinez, No. CIV 09-0281 JB/KBM, 2010 WL 1608884, at *18 (D.N.M. 2010)(Browning, J.). If multiple defendants are jointly liable, or jointly and severally liable, on some of the claims, however, the amounts of those claims may be aggregated to satisfy the amount-in-controversy requirement as to all defendants jointly liable for the claims. See Alberty v. W. Sur. Co., 249 F.2d 537, 538 (10th

Cir. 1957); Martinez v. Martinez, No. CIV 09-0281 JB/KBM, 2010 WL 1608884, at *18. Similarly, multiple plaintiffs may aggregate the amounts of their claims against a single defendant if the claims are not "separate and distinct." Martin v. Franklin Capital Corp., 251 F.3d 1284, 1292 (10th Cir. 2001)(Seymour, C.J.), abrogated on other grounds by Dart Cherokee Basin Operating Co. v. Owens, 574 U.S. 81 (2014). The same plaintiff's multiple claims against the same defendant may be aggregated, even if the claims are entirely unrelated. See 14AA Wright & Miller's Federal Practice and Procedure § 3704, at 566-95 (4th ed. 2011). While the rules on aggregation may appear complicated, they are not in practice: if a single plaintiff -- regardless whether he or she is the only plaintiff who will share in the recovery -- can recover over $75,000.00 from a single defendant -- regardless whether the defendant has jointly liable co-defendants -- then the court has original jurisdiction over the dispute between that plaintiff and that defendant. The court may then exercise supplemental jurisdiction over other claims and parties that "form part of the same case or controversy under Article III," 28 U.S.C. § 1367(a), meaning that they "derive from a common nucleus or operative fact," United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966).

Satisfaction of the amount-in-controversy requirement must be established by a preponderance of the evidence. See McPhail v. Deere & Co., 529 F.3d at 953. In the context of establishing an amount-in-controversy, the defendant seeking removal could appear to be bound by the plaintiff's chosen amount of damages in the complaint, which would seem to allow a plaintiff to avoid federal jurisdiction "merely by declining to allege the jurisdictional amount [in controversy]." McPhail v. Deere & Co., 529 F.3d at 955. The Tenth Circuit's decision in McPhail v. Deere & Co. has foreclosed such an option from a plaintiff who wishes to remain in state court.

McPhail v. Deere & Co. holds that a defendant's burden in establishing jurisdictional facts is met if the defendant proves "jurisdictional facts that make it possible that $75,000 is in play." 529 F.3d at 955. The Supreme Court clarifies that a defendant seeking removal to federal court need only include in the notice of removal a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. See Dart Cherokee Basin Operating Co., LLC v. Owens, 574 U.S. at 88. The district court should consider outside evidence and find by a preponderance of the evidence whether the amount in controversy is satisfied "only when the plaintiff contests, or the court questions, the defendant's allegation." Dart Cherokee Basin Operating Co., LLP v. Owens, 574 U.S. at 88.

## LAW REGARDING REMOVAL AND REMAND

If a civil action filed in State court satisfies the requirements for original federal jurisdiction -- most commonly, federal-question or diversity jurisdiction -- the defendant may invoke 28 U.S.C. § 1441(a) to remove the action to the federal district court "embracing the place where such action is pending." 28 U.S.C. § 1441(a). See Huffman v. Saul Holdings LP, 194 F.3d 1072, 1076 (10th Cir. 1999)("'When a plaintiff files in state court a civil action over which the federal district courts would have original jurisdiction based on diversity of citizenship, the defendant or defendants may remove the action to federal court.'")(quoting Caterpillar Inc. v. Lewis, 519 U.S. 61, 68 (1996)). In a case with multiple defendants, there must be unanimous consent to removal; a single defendant may spoil removal and keep the case in State court. See 28 U.S.C. § 1446(b)(2)(A). Only defendants have removal rights: plaintiffs defending counterclaims and third-party defendants may not remove an action, and their consent is not required for removal if all the defendants consent. See Hamilton v. Aetna Life & Cas. Co., 5 F.3d 642, 643-44 (2d Cir. 1993); Wiatt v. State Farm

Ins. Co., 560 F. Supp. 2d 1068, 1078-79 (D.N.M. 2007)(Browning, J.).  "A plaintiff objecting to

the removal may file a motion asking the district court to remand the case to state court."  Huffman

v. Saul Holdings LP, 194 F.3d at 1076 (citing Caterpillar Inc. v. Lewis, 519 U.S. at 69).

To remove a case based on diversity, the diverse defendant must demonstrate that all of the

usual prerequisites of diversity jurisdiction are satisfied.  Under 28 U.S.C. § 1332(a), a federal

district court possesses original subject-matter jurisdiction over a case when the parties are diverse

in citizenship and the amount in controversy exceeds $75,000.00.  See 28 U.S.C. § 1332(a);

Johnson v. Rodrigues (Orozco), 226 F.3d 1103, 1107 (10th Cir. 2000).  Diversity between the

parties must be complete.  See Caterpillar Inc. v. Lewis, 519 U.S. at 68; Radil v. Sanborn W.

Camps, Inc., 384 F.3d 1220, 1225 (10th Cir. 2004).  In addition to the original jurisdiction

requirements, 28 U.S.C. § 1441(b)(2) lays out the "forum-defendant rule," which provides that a

case may not be removed on the basis of diversity jurisdiction if any defendant is a citizen of the

state in which the state-court action was brought.  See § 1441(b)(2).  The Tenth Circuit notes:

> that § 1441(b)(2) -- the so-called forum-defendant rule -- provides as a separate
> requirement that "[a] civil action otherwise removable solely on the basis of
> [diversity] jurisdiction . . . may not be removed if any of the parties in interest
> properly joined and served as defendants is a citizen of the State in which such
> action is brought."

Brazell v. Waite, 525 F. App'x 878, 884 (10th Cir. 2013)(unpublished)(quoting 28 U.S.C.

§ 1441(b)(2))(alterations in Brazell v. Waite, but not 28 U.S.C. § 1441(b)(2)).[3]  The forum-

_____

[3]Brazell v. Waite, 525 F. App'x 878, 884 (10th Cir. 2013). is an unpublished opinion, but
the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in
the case before it.  See 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may
be cited for their persuasive value.").  The Tenth Circuit states:

> In this circuit, unpublished orders are not binding precedent, . . . And we
> have generally determined that citation to unpublished opinions is not favored.

defendant rule applies to only cases removed under diversity jurisdiction; a defendant may remove a case brought against it in its home State on the basis of federal-question jurisdiction. See 28 U.S.C. § 1441(b). Last, a case cannot be removed if it began with a nondiverse party or a forum-citizen defendant, and only later came to satisfy the requirements of removal jurisdiction, unless: (i) the plaintiff voluntarily dismissed the removal-spoiling party, see DeBry v. Transamerica Corp., 601 F.2d 480, 488 (10th Cir. 1979);[4] Flores-Duenas v. Briones, 2013 U.S. Dist. LEXIS 173620, at *12 n.6, *26 (D.N.M. 2013)(Browning, J.)(describing the operation of the "voluntary-involuntary" rule); or (ii) the removal-spoiling party is joined fraudulently or misjoined procedurally.

### 1.    The Presumption Against Removal.

Federal courts are courts of limited jurisdiction; thus, there is a presumption against removal jurisdiction, which the defendant seeking removal must overcome. See Laughlin v. Kmart

---

However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005). The Court concludes that Brazell v. Waite, Okla. Farm Bureau Mut. Ins. Co. v. JSSJ Corp., 149 F. App'x 775, 778 (10th Cir. 2005), Browning v. Am. Family Mut. Ins. Co., 396 F. App'x 496, 505-06 (10th Cir. 2010), Jenkins v. MTGLQ Investors, 218 F. App'x. 719, 723 (10th Cir. 2007), and Watkins v. Terminix Int'l Co., 1997 WL 34676226, at *2 (10th Cir. 1997)(per curiam), have persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.

[4]In DeBry v. Transamerica Corp., the Tenth Circuit explains:

The general effect of the [voluntary-involuntary] test is that a cause cannot be removed where the removability is a result of some development other than a voluntary act of plaintiff. The cause cannot be removed as a result of evidence from the defendant or the result of a court order rendered on the merits of the case.

601 F.2d at 488 (citing Self v. General Motors Corp., 588 F.2d 655 (9th Cir. 1978)).

Corp., 50 F.3d 871, 873 (10th Cir. 1995); Fajen v. Found. Reserve Ins. Co., 683 F.2d 331, 333 (10th Cir. 1982); Martin v. Franklin Capital Corp., 251 F.3d at 1290; Bonadeo v. Lujan, No. CIV 08–0812 JB/ACT, 2009 U.S. Dist. LEXIS 45672, at *4 (D.N.M. 2009)(Browning, J.)("Removal statutes are strictly construed, and ambiguities should be resolved in favor of remand.").  The defendant seeking removal must establish that federal court jurisdiction is proper "by a preponderance of the evidence." McPhail v. Deere & Co., 529 F.3d at 953.  See Bonadeo v. Lujan, 2009 U.S. Dist. LEXIS 45672, at *4 ("As the removing party, the defendant bears the burden of proving all jurisdictional facts and of establishing a right to removal.").  See also McPhail v. Deere & Co., 529 F.3d at 955 ("It would have been more precise to say that the defendant must affirmatively establish jurisdiction by proving jurisdictional facts . . . .").  Because federal courts are courts of limited jurisdiction, the Tenth Circuit has ruled that "courts must deny such jurisdiction if not affirmatively apparent on the record." Okla. Farm Bureau Mut. Ins. Co. v. JSSJ Corp., 149 F. App'x 775, 778 (10th Cir. 2005)(unpublished), abrogated on other grounds by Dart Cherokee Basin Operating Co. v. Owens, 135 S. Ct. 547 (2014).  This strict construction and presumption against removal should not, however, be interpreted as hostility toward removal cases in the federal courts.  See McEntire v. Kmart Corp., 2010 U.S. Dist. LEXIS 13373, at *2 ("Strict construction does not mean judicial hostility toward removal.  Congress provided for removal, and courts should not create rules that are at tension with the statute's language in the name of strict construction.")(citing Bonadeo v. Lujan, 2009 U.S. Dist. LEXIS 45672, at *12).

    2.    **Removal's Procedural Requirements.**

       Section 1446 of Title 28 of the United States Code governs the procedure for removal.  "Because removal is entirely a statutory right, the relevant procedures to effect removal must be

followed." Thompson v. Intel Corp., 2012 U.S. Dist. LEXIS 126311, at *5.  A removal that does not comply with the express statutory requirements is defective and must be remanded to State court.  See Huffman v. Saul Holdings LP, 194 F.3d at 1077.  See also Chavez v. Kincaid, 15 F. Supp. 2d 1118, 1119 (D.N.M. 1998)(Campos, J.)("The [r]ight to remove a case that was originally in state court to federal court is purely statutory, not constitutional.").

Section 1446(a) of Title 28 of the United State Code provides that a party seeking removal of a matter to federal court shall file a notice of removal in the district and division where the state action is pending, "containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action."  28 U.S.C. § 1446(a).  Such notice of removal is proper if filed within thirty days from the date when the case qualifies for federal jurisdiction.  See Caterpillar Inc. v. Lewis, 519 U.S. at 68-69; 28 U.S.C. § 1446(b).  The Tenth Circuit elaborates that, for the thirty-day period to begin to run, "this court requires clear and unequivocal notice from the [initial] pleading itself" that federal jurisdiction is available.  Akin v. Ashland Chem. Co., 156 F.3d 1030, 1036 (10th Cir. 1998).  The Tenth Circuit specifically disagrees with "cases from other jurisdictions which impose a duty to investigate and determine removability where the initial pleading indicates that the right to remove may exist."  Akin v. Ashland Chem. Co., 156 F.3d at 1036.[5]

---

[5]In 2011, Congress clarifies removal jurisdiction and procedures in the Federal Courts Jurisdiction and Clarification Act of 2011, Pub. L. No. 112-63, 125 Stat. 758 (2011).  See Thompson v. Intel Corp., 2012 U.S. Dist. LEXIS 126311, at *12 n.5.

On December 7, 2011, President Obama signed into law the Federal Courts Jurisdiction and Venue Clarification Act of 2011, which is intended to clarify the operation of federal jurisdictional statutes and facilitate the identification of the appropriate state or federal courts in which actions should be brought [see Pub. L. No. 112-63, 125 Stat. 758 (2011)].

_____

. . . .

Section 103 of the Act makes several changes to removal and remand procedures.  28 U.S.C. § 1446 is amended to cover removal procedures for civil cases only; provisions governing removal of criminal prosecutions have been moved into new 28 U.S.C. § 1455 [Pub. L. No. 112-63, § 103(b), (c), 125 Stat. 758 (2011)].

Section 103 of the Act also amends 28 U.S.C. § 1441(c) to provide that, on the removal of any civil action with both removable claims and nonremovable claims (i.e., those outside of the original or supplemental jurisdiction of the district court), the district court must sever all nonremovable claims and remand them to the state court from which the action was removed. The amendment also provides that only defendants against whom a removable claim has been asserted need to join in or consent to removal of the action.  [Pub. L. No. 112-63, § 103(a), 125 Stat. 758 (2011)].

Section 103 also amends 28 U.S.C. § 1446(b) to provide that, in a multi-defendant case, each defendant will have 30 days from his or her own date of service (or receipt of initial pleading) to seek removal.  Earlier-served defendants may join in or consent to removal by a later-served defendant [Pub. L. No. 112-63, § 103(a), 125 Stat. 758 (2011)].  These provisions are intended to resolve a circuit split over when the 30-day removal period begins to run in cases in which not all defendants are served at the same time [see H.R. Rep. No. 112-10, at 13-14 (2011); see, e.g., Bailey v. Janssen Pharm., Inc., 536 F.3d 1202 (11th Cir. 2008)(30-day period runs from date of service on last-served defendant, and earlier-served defendants may join in last-served defendant's timely removal); Marano Enters. v. Z-Teca Rests., LP, 254 F.3d 753 (8th Cir. 2011)(each defendant has 30 days to effect removal, regardless of when or if other defendants have sought to remove); Getty Oil Corp. v. Ins. Co. of N. Am., 841 F.2d 1254 (5th Cir. 1988)(first-served defendant and all then-served defendants must join in notice of removal within 30 days after service on first-served defendant)].

Section 103 also enacts a new subdivision (c) of 28 U.S.C. § 1446, containing provisions governing the procedures for removal.  These include new authorization for a notice of removal in a diversity case to assert the amount in controversy if the initial pleading seeks (1) nonmonetary relief, or (2) a money judgment when state practice either does not permit a demand for a specific sum or permits the recovery of damages in excess of the amount demanded.  Also part of a new subdivision (c) of 28 U.S.C. § 1446 is a provision allowing removal of a case based on diversity of citizenship more than one year after commencement of the action if the district court finds that the plaintiff acted in bad faith in order to prevent

"When a civil action is removed solely under section 1441(a), [the standard removal statute, which excludes multiparty, multiforum jurisdiction,] all defendants who have been properly joined and served must join in or consent to the removal of the action." 28 U.S.C. § 1446(b)(2)(A). The failure of all defendants to consent to removal will result in remand. See Bonadeo v. Lujan, 2009 WL 1324119, at *5-6; McEntire v. Kmart Corp., No. CIV 09-0567 JB/LAM, 2010 WL 553443, at *4 (D.N.M. Feb. 9, 2010)(Browning, J.)("A notice of removal fails if this procedural requirement is not met."). The rule of unanimity applies to all defendants, whether they are required parties under rule 19 or merely proper parties under rule 20. See Akin v. Ashland Chem. Co., 156 F.3d 1030, 1034 (10th Cir. 1998)(stating that the general removal rule "require[s] all defendants to join in the removal petition"); Cornwall v. Robinson, 654 F.2d 685, 686 (10th Cir. 1981)("A co-defendant, Interstate Book Company, did not join in the petition for removal and the petition was thus procedurally defective."); Bonadeo v. Lujan, 2009 WL 1324119, at *5 ("Although the procedure for a notice of removal set out in 28 U.S.C. § 1446(b) is couched in terms of a single defendant, courts have held that all defendants must join a removal petition or removal will be defective.")(citing Cornwall v. Robinson, 654 F.2d at 686). The defendants who have not been served, however, need not join in removal. See Kiro v. Moore, 229 F.R.D. 228, 230-32 (D.N.M. 2005)(Browning, J.).

---

a defendant from removing the action (such as by deliberately failing to disclose the amount in controversy) [Pub. L. No. 112-63, § 103(b), 125 Stat. 758 (2011)].

Thompson v. Intel Corp., 2012 U.S. Dist. LEXIS 126311, at *12 n.5 (quoting 16 J. Moore, D. Coquillette, G. Joseph, S. Schreiber, G. Vairo, & C. Varner, Moore's Federal Practice § 107.30[2][a][iv], at 107SA-1 to 107SA-2 (3d ed. 2013)).

3.    **Amendment of the Notice of Removal.**

In Caterpillar, Inc. v. Lewis, the Supreme Court holds that a defect in subject-matter jurisdiction cured before entry of judgment does not warrant reversal or remand to State court. See 519 U.S. at 70-78. Citing Caterpillar, Inc. v. Lewis, the Tenth Circuit holds that "a defect in removal procedure, standing alone, is not sufficient to warrant vacating judgment and remand to state court if subject matter jurisdiction existed in the federal court." Browning v. Am. Family Mut. Ins. Co., 396 F. App'x 496, 505-06 (10th Cir. 2010)(unpublished). In McMahon v. Bunn-O-Matic Corp., 150 F.3d 651 (7th Cir. 1998)(Easterbrook, J.), the United States Court of Appeals for the Seventh Circuit notices, on appeal, defects in the notice of removal, including that the notice of removal fails to allege properly diversity of citizenship. See 150 F.3d at 653 ("As it happens, no one paid attention to subject-matter jurisdiction . . . ."). The Seventh Circuit nevertheless permits the defective notice of removal to be amended on appeal to establish properly subject-matter jurisdiction. See 150 F.3d at 653-54.

The Tenth Circuit allows defendants to remedy defects in their petition or notice of removal. See Lopez v. Denver & Rio Grande W. R.R. Co., 277 F.2d 830, 832 (10th Cir. 1960)("Appellee's motion to amend its petition for removal to supply sufficient allegations of citizenship and principal place of business existing at the time of commencement of this action is hereby granted, and diversity jurisdiction is therefore present."); Jenkins v. MTGLQ Investors, 218 F. App'x. 719, 723 (10th Cir. 2007)(unpublished)(granting unopposed motion to amend notice of removal to allege properly jurisdictional facts); Watkins v. Terminix Int'l Co., 1997 WL 34676226, at *2 (10th Cir. 1997)(per curiam)(unpublished)(reminding the defendant that, on remand, it should move to amend the notice of removal to properly allege jurisdictional facts).

The Tenth Circuit also reasons that disallowing amendments to the notice of removal, even after the thirty-day removal window has expired, when the defendant makes simple errors in its jurisdictional allegations, "would be too grudging with reference to the controlling statute, too prone to equate imperfect allegations of jurisdiction with the total absence of jurisdictional foundations, and would tend unduly to exalt form over substance and legal flaw-picking over the orderly disposition of cases properly committed to federal courts." Hendrix v. New Amsterdam Cas. Co., 390 F.2d 299, 301 (10th Cir. 1968). The Tenth Circuit notes that a simple error in a jurisdictional allegation includes failing to identify a corporation's principal place of business or referring to an individual's state of residence rather than citizenship. See Hendrix v. New Amsterdam Cas. Co., 390 F.2d at 301. In McEntire v. Kmart Corp., when faced with insufficient allegations in the notice of removal -- allegations of "residence" not "citizenship" -- the Court grants the defendants leave to amend their notice of removal to cure the errors in some of the "formalistic technical requirements." 2010 WL 553443, at *8 (citing Hendrix v. New Amsterdam Cas. Co., 390 F.2d at 300-02). Further, in Thompson v. Intel Corp., the Court permits the defendant, Intel Corp., to amend its notice of removal to add missing jurisdictional elements, including evidence that its principal place of business and corporate headquarters -- the center of Intel Corp.'s direction, control, and coordination of activities -- is out of State, so that the diversity requirements are met. See 2012 WL 3860748, at *1.

There are limits to the defects that an amended notice of removal may cure, however, as Professors Charles Alan Wright and Arthur R. Miller explain:

> [A]n amendment of the removal notice may seek to accomplish any of several objectives. It may correct an imperfect statement of citizenship, state the previously articulated grounds more fully, or clarify the jurisdictional amount. In most circumstances, however, defendants may not add completely new grounds for

> removal or furnish missing allegations, even if the court rejects the first-proffered basis of removal, and the court will not, on its own motion, retain jurisdiction on the basis of a ground that is present but that defendants have not relied upon

14 Wright & Miller's <u>Federal Practice and Procedure</u> § 3733 (rev. 4th ed. 2020)(footnotes omitted).  Professor Moore similarly recognizes: "[A]mendment may be permitted after the 30-day period if the amendment corrects defective allegations of jurisdiction, but not to add a new basis for removal jurisdiction."  16 J. Moore, D. Coquillette, G. Joseph, S. Schreiber, G. Vairo, & C. Varner, <u>Moore's Federal Practice</u> § 107.30[2][a][iv], at 107-317 to -18 (3d ed. 2013).  Thus, where the defendant asserts diversity jurisdiction as a basis for removal of an action to federal court, the district court may permit the removing defendant to amend its removal notice, if necessary, to allege fully facts that satisfy, requirements by a preponderance of the evidence, diversity jurisdiction's requirements.  <u>See</u> <u>Carrillo v. MCS Indus., Inc.</u>, No. CIV 12–0573 JB/WPL, 2012 WL 5378300, at *14 (D.N.M. 2012)(Browning, J.)(permitting a party to amend its notice of removal when the removing party does "not assert[] a new basis for jurisdiction, or a new allegation not present in its Notice of Removal; rather, the . . . Amended Notice of Removal provides greater detail regarding the same basis for jurisdiction asserted in the . . . Notice of Removal").  <u>Cf.</u> <u>New Mexico ex rel. Balderas v. Valley Meat Co.</u>, No. CIV 14-1100 JB/KBM, 2015 WL 3544288, at *25 (D.N.M. 2015)(Browning, J.)(denying amendment when it seeks to assert a new jurisdictional basis that the notice of removal does not raise).

## <u>ANALYSIS</u>

The Court denies the Remand Motion and concludes that complete diversity exists in this case.  The determinative legal question here is whether the personal representative of a "deceased person" under the Wrongful Death Act, N.M.S.A. § 41-2-3, is "the legal representative of the estate

of a decedent" within the meaning of § 1332(c)(2). If a Wrongful Death Act personal representative is "the legal representative of the estate of a decedent" under § 1332(c)(2), then the federal diversity statute imputes Rivera's citizenship to Lopez, destroying complete diversity and divesting the Court of jurisdiction. By contrast, if a Wrongful Death Act personal representative is not "the legal representative of the estate of a decedent" under § 1332(c)(2), then Lopez' New Mexico citizenship controls, and complete diversity exists. After reviewing the Tenth Circuit's decision in <u>Tank</u> and the Supreme Court of New Mexico's recent decision in <u>Lopez</u>, which discusses how the Wrongful Death Act operates, the Court concludes that, in this case, a Wrongful Death Act personal representative is not "the legal representative of the estate of a decedent." Accordingly, the Court denies the Remand Motion.

I.   **LOPEZ, RIVERA'S WRONGFUL DEATH ACT PERSONAL REPRESENTATIVE, IS NOT THE LEGAL REPRESENTATIVE OF THE <u>ESTATE OF THE DECEDENT WITHIN THE MEANING OF § 1332(C)(2).</u>**

Lopez, Rivera's Wrongful Death Act personal representative, is not "the legal representative of the estate of a decedent" within the meaning of § 1332(c)(2). This issue is a statutory interpretation issue, and the Court's reasoning proceeds in two steps. The first step explains how the Wrongful Death Act operates. In doing so, the Court relies on <u>Lopez</u>, the Supreme Court of New Mexico's very recent case that discusses the Wrongful Death Act. The second step analyzes what "legal representative of the estate of a decedent" means in the federal diversity statute, § 1332(c)(2), and considers whether this phrase encapsulates the Wrongful Death Act personal representative in this case. The Court begins with the first step.

New Mexico's Legislature passed the Wrongful Death Act in 1882 to break from the common-law rule that "any cause of action for a tort resulting in death died with the plaintiff."

- 22 -

Lopez, No. S-1-SC-4016, ¶ 1.  The Wrongful Death Act creates "a right of recovery for statutory

beneficiaries and accountability for a tortfeasor's actions resulting in death."  Lopez, No. S-1-SC-

4016,  ¶ 1.  It provides: "Whenever the death of a person shall be caused by the wrongful act,

neglect or default of another, . . . then . . . the person who . . . would have been liable, if death had

not ensued, shall be liable to an action for damages, notwithstanding the death of the person

injured."  N.M.S.A. § 41-2-1.

This cause of action raises and answers two questions.  First, because the injured person is

dead, the statute has to decide who brings that person's claim.  The Wrongful Death Act answers

this question by requiring that every Wrongful Death Act action "shall be brought by and in the

name of the personal representative of the deceased person."  N.M.S.A. § 41-2-3.  Second, the

statute has to decide what happens to the money that the personal representative, the plaintiff,

recovers.  The statute answers this question by laying out a set of distribution rules:

> The proceeds of any judgment obtained in any such action shall not be liable for
> any debt of the deceased; provided the decedent has left a spouse, child, father,
> mother, brother, sister or child or children of the deceased child, as defined in the
> New Mexico Probate Code [Chapter 45 NMSA 1978], but shall be distributed as
> follows:
>
> A.      if there is a surviving spouse and no child, then to the spouse;
>
> B.      if there is a surviving spouse and a child or grandchild, then one-half to the
>         surviving spouse and the remaining one-half to the children and
>         grandchildren, the grandchildren taking by right of representation;
>
> C.      if there is no husband or wife, but a child or grandchild, then to such child
>         and grandchild by right of representation;
>
> D.      if the deceased is a minor, childless and unmarried, then to the father and
>         mother who shall have an equal interest in the judgment, or if either of them
>         is dead, then to the survivor;
>
> E.      if there is no father, mother, husband, wife, child or grandchild, then to a

surviving brother or sister if there are any; and

F.    if there is no kindred as named in Subsections A through E of this section, then the proceeds of the judgment shall be disposed of in the manner authorized by law for the disposition of the personal property of deceased persons.

N.M.S.A. § 41-2-3 (brackets in original).

The Supreme Court of New Mexico interprets these rules to mean that personal representatives are "merely nominal parties who act for the benefit of the statutory beneficiaries." Lopez, No. S-1-SC-4016, ¶ 29 (citing Chavez v. Regents of Univ. of N.M., 1985-NMSC-114, ¶ 7, 103 N.M. 606, 711 P.2d 883 ("Chavez")). These "nominal parties . . . act as a sort of procedural placeholder for decedents." Lopez, No. S-1-SC-4016, at ¶ 29. Chavez explains the personal representative's function even more fulsomely:

It is merely "incidental" that a "personal representative" is named to bring a wrongful death action. Henkel v. Hood, 49 N.M. 45, 156 P.2d 790 (1945). Any recovery for wrongful death has no relation to the deceased's estate; the recovery does not become part of the estate assets. Trefzer v. Stiles, 56 N.M. 296, 243 P.2d 605 (1952). The personal representative is only a nominal party who was selected by the Legislature to act as the statutory trustee for the individual statutory beneficiaries. Dominguez v. Rogers, 100 N.M. 605, 673 P.2d 1338 (Ct. App.), cert. denied, 100 N.M. 689, 675 P.2d 421 (1983).

Chavez, 1985-NMSC-114, ¶ 8, 103 N.M. at 608-09, 711 P.2d at 885-86. See Lopez, No. S-1-SC-4016, ¶ 30 (discussing Chavez' conception of the personal representative's function, and stating that "[w]e agree and reaffirm our holding in Chavez").

Chavez' characterization of the Wrongful Death Act has logic. If the personal representative recovers from the tortfeasor, the statute dictates where the damages go and in what amounts. Because "the recovery does not become part of the estate assets," the decedent's will does not play a role in the damages' distribution. Chavez, 1985-NMSC-114, ¶ 8, 103 N.M. at 608-

09, 711 P.2d at 885-86.  Instead, "[a] personal representative under the Wrongful Death Act . . . must simply distribute any proceeds obtained in accordance with the statute and has no discretionary authority."  Leyba v. Whitley, 1995-NMSC-066, ¶ 17, 120 N.M. 768, 774, 907 P.2d 172, 178.

Chavez and Lopez agree that Wrongful Death Act personal representatives do not represent the decedent's estate; accordingly, § 1332(c)(2)'s citizenship-assigning rule does not apply to the personal representative, Lopez, in this case.  Section 1332(c)(2) is part of the federal diversity jurisdiction statute, and it assigns a decedent's citizenship to "the legal representative of the estate of a decedent."  28 U.S.C. § 1332(c)(2).  "Estate" is a legal term of art that means "[t]he total property of whatever kind that is owned by a decedent prior to the distribution of that property in accordance with the terms of a will, or when there is no will, by the laws of inheritance in the state of domicile of the decedent."  Estate, Black's Law Dictionary (5th ed. 1979).  See Decedent's Estate, Black's Law Dictionary (5th ed. 1979)("Property, both real and personal, which person possesses at the time of his death, and title to it descends immediately to his heirs upon his death subject to the control of the probate court for the purposes of paying debts and claims and after distribution the estate ceases to exist."); Nat'l Credit Union Admin. Bd. v. Nomura Home Equity Loan, Inc., 764 F.3d 1199, 1227 (10th Cir. 2014)("Courts often begin an ordinary meaning analysis by consulting contemporary dictionary definitions.").  As Chavez notes, however, Wrongful Death Act recovery "has no relation to the deceased's estate," because the statute, not the personal representative or the decedent's will, dictates how damages are distributed to the decedent's relatives.  Chavez, 1985-NMSC-114 at ¶ 8, 103 N.M. at 608-09, 711 P.2d at 885-86.  So, § 1332(c)(2)'s plain text does not cover New Mexico Wrongful Death Act personal representatives

simply by dint of their appointment under the statute.

The Tenth Circuit's reasoning in Tank supports this conclusion. In Tank, the plaintiff's mother dies, and the plaintiff sues a doctor and a hospital under Kansas' wrongful death statute, Kan. Stat. Ann. § 60-1902. See 160 F.3d at 598. The plaintiff is a Wisconsin resident, but the plaintiff's mother -- the decedent -- and the defendants are Kansas residents. See 160 F.3d at 598. It follows that the district court's jurisdiction depends on § 1332(c)(2)'s application to the Kansas wrongful death statute, which states that a wrongful death action

> may be commenced by any one of the heirs at law of the deceased who has sustained a loss by reason of the death. . . . The action shall be for the exclusive benefit of all of the heirs who has sustained a loss regardless or whether they all join or intervene therein, but the amounts of their respective recoveries shall be in accordance with the subsequent provisions of this article.

Kan. Stat. Ann. § 60-1902. According to the Tenth Circuit, in Kansas, a wrongful death claim "is brought neither on behalf or for the benefit of the estate, but only on behalf and for the benefit of the heirs." Tank, 160 F.3d at 599. Although the defendants argue that § 1332(c)(2) applies despite this language -- in their view, a Kansas wrongful death plaintiff "acts in a 'representative capacity'" and triggers the federal statute -- the Tenth Circuit rejects that argument, explaining that "the named plaintiff does serve as a representative," but "the plaintiff represents only the other heirs and not the estate itself." Tank, 160 F.3d at 599 (no citation for quoted material). The Tenth Circuit, therefore, affirms the district court's denial of a motion to dismiss for lack of jurisdiction and concludes that diversity jurisdiction exists. See Tank, 160 F.3d at 601 (holding that "an individual bringing a wrongful death action under" Kansas law "is not the 'legal representative of the estate of a decedent' under § 1332(c)(2), and is therefore not deemed to be a resident of the same state as the decedent for diversity" jurisdiction purposes).

In reaching this conclusion, the Tenth Circuit reviews several out-of-Circuit cases applying § 1332(c)(2) to wrongful death statutes.  First, the Tenth Circuit discusses James v. Three Notch Medical Center, 966 F. Supp. 1112 (M.D. Ala. 1997)(Thompson, J.)("James"), which holds that § 1332(c)(2) applies to an Alabama personal representative in a wrongful death action such that the personal representative takes the decedent's citizenship.  See James, 966 F. Supp. at 1116.  The Tenth Circuit explains that, in James, even though the Alabama wrongful death claims "were brought for the exclusive benefit of the heirs as opposed to the estate, they nonetheless were brought on behalf of the estate."  Tank, 160 F.3d at 600 (emphasis in Tank).  Although the Tenth Circuit does not delve into James, this District Court notes that Alabama law made James an easy case, because, according to the Honorable Myron H. Thompson, United States District Judge for the United States District Court for the Middle District of Alabama in James, under the Alabama wrongful death act, "a 'personal representative' is defined as the executor or executrix of the decedent's will or the administrator or administratrix of an intestate's estate."  James, 966 F. Supp. at 1116 (quoting Waters v. Hipp, 600 So.2d 981, 982 (Ala. 1992)).

Second, the Tenth Circuit discusses Milam v. State Farm Mutual Automobile Insurance Co, 972 F.2d 166 (7th Cir. 1992)(Posner, J.)("Milam"), in which the Seventh Circuit holds that, under Louisiana law, a wrongful death plaintiff sues "not as the legal representative of her husband's estate but in her own behalf," because "Louisiana apparently does not regard a decedent's estate as an entity on behalf of which a lawsuit can be brought."  Milam, 972 F.2d at 168.  In reaching this conclusion, Milam cites to a Court of Appeals of Louisiana case holding that, even though a wrongful death plaintiff is the administrator of the decedent's estate, the plaintiff "has no right of action."  Davis v. State Farm Mut. Ins. Co., 208 So.2d 412, 413 (La. App.

1968)("Davis").  Davis explains that, under Louisiana Civil Code Article 2315, "a wrongful death action belongs only to the parties designated in the statute" and "is limited to the beneficiaries specifically designated in Article 2315."  Davis, 208 So.2d at 413.  According to the Tenth Circuit, Milam's reasoning "is equally applicable" to the Kansas wrongful death act, because "Kansas law precludes a wrongful death suit from being pursued by or on behalf of the estate."  Tank, 160 F.3d at 600.

Tank's reasoning applies to the relationship between the New Mexico Wrongful Death Act and § 1332(c)(2).  Tank states that a Kansas wrongful death claim "is brought neither on behalf or for the benefit of the estate, but only on behalf and for the benefit of the heirs."  Tank, 160 F.3d at 599.  Similarly, a New Mexico Wrongful Death Act claim benefits only the decedent's heirs and does not enlarge the decedent's estate.  See Chavez, 1985-NMSC-114, ¶ 8, 103 N.M. at 608-09, 711 P.2d at 885-86.  The Court acknowledges that the New Mexico Wrongful Death Act does not include Kansas' restriction that the action "may be commenced by any one of the heirs at law of the deceased . . . ."  Kan. Stat. Ann. § 60-1902.  This difference does not undermine the important similarity between the two statutes, however, which is that, in New Mexico, personal representatives are "merely nominal parties who act for the benefit of the statutory beneficiaries."  Lopez, No. S-1-SC-4016, ¶ 29 (citing Chavez, 1985-NMSC-114, ¶ 7, 103 N.M. at 609, 711 P.2d at 886).  When the Tenth Circuit reasons that, in Kansas, "the plaintiff represents only the other heirs and not the estate itself," it cites to the portion of the Kansas wrongful death statute that declares, "[t]he action shall be for the exclusive benefit of all of the heirs . . . ."  Tank, 160 F.3d at 599 (citing Kan. Stat. Ann. § 60-1902).  By citing to this provision, the Tenth Circuit underscores that it is important to look at who recovers under wrongful death statutes before applying

- 28 -

§ 1332(c)(2).  The answer to the "who recovers" inquiry is the same in Kansas and New Mexico: recovery flows to the heirs, and not to the estate.  See Chavez, 1985-NMSC-114, ¶ 8, 103 N.M. at 608-09, 711 P.2d at 885-86 (asserting that recovery under the New Mexico Wrongful Death Act "does not become part of the estate assets").  This similarity between Kansas law and New Mexico law compels the same result here as the result in Tank: § 1332(c)(2) does not apply to a Wrongful Death Act personal representative in New Mexico.  Consequently, Lopez' New Mexico citizenship controls in this case, because Lopez is the named plaintiff and Rivera, the decedent's, personal representative.

The leading case on this issue in the District of New Mexico comes out the other way.  In Brown v. Mahdi, 482 F. Supp. 2d 1300 (D.N.M. 2007)(Johnson, J.)("Brown"), the Honorable William Johnson, United States District Judge for the District of New Mexico, considers whether § 1332(c) applies to a New Mexico Wrongful Death Act personal representative when the decedent has heirs and concludes that it applies.  See Brown, 482 F. Supp. 2d at 1303.  Brown's starting point is the same as the Court's starting point: "[T]he personal representative serves as a statutory trustee for identifiable beneficiaries . . . and the proceeds are distributed to the heirs."  Brown, 482 F. Supp. 2d at 1304 (citing Stang v. Hertz Corp., 1970-NMSC-048, ¶ 3, 81 N.M. 348, 350, 467 P.2d 14, 16 ("Stang")).  Brown reasons, however, that the decedent's estate can pursue a Wrongful Death Act claim, because the "NMWDA allows the recovery of damages even when there are no heirs."  Brown, 482 F. Supp. 2d at 1304.  Citing Stang, Brown adds that, "[w]hen there are no heirs, the personal representative acts as the trustee for the estate creditors and the state."  Brown, 482 F. Supp. 2d at 1304 (citing Stang, 1970-NMSC-048, ¶ 6, 81 N.M. at 350, 467 P.2d at 16).  Having stated this premise, Brown concludes that, "unlike the Kansas statute, the NMWDA does

not limit the plaintiff who can sue for wrongful death to a person related to the decedent. . . . [N]o

'oddity' of New Mexico law precludes a wrongful death suit from being pursued by or on behalf

of the estate." Brown, 482 F. Supp. 2d at 1304 (quoting Tank, 160 F.3d at 600).[6]  Judge Johnson

holds, therefore, that diversity jurisdiction does not exist in Brown, where the decedent is a New

Mexico citizen, the defendants are also New Mexico citizens, and decedent's personal

representative is a Texas citizen.  See Brown, 482 F. Supp. 2d at 1301, 1305.

The Court disagrees with Brown's final logical step.  Until that step, Brown's premises are

sound.  Brown reasons that, in a situation where a personal representative brings a Wrongful Death

Act claim and the decedent has no heirs, § 1332(c)(2) applies to the personal representative.  As

---

[6]At least two other district judges in the District of New Mexico agree with Judge Johnson's
analysis in Brown.  In Murphy v. Trujillo, No. CIV 12-0943 JAP/KBM, 2014 WL 12796735
(D.N.M. March 19, 2014), the Honorable James A. Parker, Senior United States District Judge for
the District of New Mexico, discusses and applies Brown, but does not add additional analysis.
Senior Judge Parker notes that the Honorable Paul Kelly, Jr., United States Circuit Judge for the
United States Court of Appeals for the Tenth Circuit, also agrees with and applies Brown while
sitting by designation in the District of New Mexico.  See Murphy v. Trujillo, 2014 WL 12796735,
at * 4.  Judge Kelly's analysis in that case also applies Brown, stating:

> In Tank v. Chronister, 160 F.3d 597 (10th Cir. 1998), the Tenth Circuit held that
> § 1332(c)(2) did not apply to a wrongful death plaintiff (Wisconsin son of decedent)
> given that a Kansas wrongful death action is "brought neither on behalf or for the
> benefit of the estate, but only on behalf and for the benefit of the heirs." Id. at 599.
> The panel contrasted statutory schemes allowing for court or statutory appointment
> of representatives (not necessarily related to the decedent) acting on behalf of the
> estate, notwithstanding that the claims are brought for the exclusive benefit of the
> heirs.  Id. at 600.  Judge Johnson relied on this distinction in Brown v. Mahdi, 482
> F. Supp. 2d 1300, 1304 (D.N.M. 2007), and I agree with his reasoning.  Though the
> power of the wrongful death personal representative may be limited, see Chavez v.
> Regents of Univ. of N.M., 711 P.2d 883, 886 (N.M. 1985), the wrongful death
> personal representative still acts in a representative capacity.

Biedscheid v. Daimler Chrysler Motor Company L.L.C., No. CIV 07-686 PK/RHS, slip op. at 3
(D.N.M. Oct. 3, 2007)(unpublished).  Because both Judge Kelly and Judge Parker rely on Brown
and Tank, the Court focuses its discussion on these cases.

Brown points out, this conclusion flows from Stang's observation that a personal representative "'is nonetheless a trustee for the state and for estate creditors where none of the named kin were left, or the line of descent runs out and exhausts itself in the fruitless search for an heir.'" Stang, 1970-NMSC-048, ¶ 6, 81 N.M. at 350, 467 P.2d at 16 (quoting Henkel v. Hood, 1945-NMSC-006, ¶ 26, 49 N.M. 45, 51, 156 P.2d 790, 794). See Brown, 482 F. Supp. at 1304. In the "rare" instance in which there are no heirs and, thus, Wrongful Death Act recovery "would become subject either to estate debts or escheat," Henkel v. Hood, 1945-NMSC-006, ¶ 25, 49 N.M. at 51, 156 P.2d at 793, the personal representative is necessarily the legal representative of the decedent's estate, because the statute funnels recovery into the estate. When there are no heirs, the personal representative's responsibilities are different. The personal representative must, in this scenario, manage estate funds as "'a trustee for the state and for estate creditors.'" Stang, 1970-NMSC-048, ¶ 6, 81 N.M. at 350, 467 P.2d at 16 (quoting Henkel v. Hood, 1945-NMSC-006, ¶ 26, 49 N.M. 45, 51, 156 P.2d 790, 794). When a personal representative brings a wrongful death claim for a decedent without heirs, therefore, the Court agrees with Brown that this claim is "brought on behalf of the estate" and falls within § 1332(c)(2)'s scope. Brown, 482 F. Supp. 2d at 1304.

The Court parts ways with Brown, however, when Brown -- a case in which the decedent has heirs -- holds that "a personal representative under the NMWDA constitutes a 'legal representative of the estate' within the meaning of § 1332(c)." Brown, 482 F. Supp. 2d at 1305. In the Court's view, it does not follow that, because § 1332(c)(2) applies to Wrongful Death Act personal representatives when the decedent has no heirs, § 1332(c)(2) also applies to the personal representatives when the decedent has heirs. When there are heirs, the personal representative serves as their statutory trustee. See Stang, 1970-NMSC-048, at ¶ 3, 81 N.M. at 350, 467 P.2d 14

at 16.  Brown does not explain why a personal representative acting as the trustee for the decedent's

heirs also represents the decedent's estate under § 1332(c)(2).

Other federal cases analyzing this issue reach similar conclusions to the Court's

conclusion; that is, they give "meaning to the federal statute's use of the term 'estate,' and

examine[] the identity of the represented party to determine" whether § 1332(c)(2) applies.

Steinlage ex rel Smith v. Mayo Clinic Rochester, 435 F.3d 913 (8th Cir. 2006)(Melloy,

J.)("Steinlage").  For example, in Steinlage, the United States Court of Appeals for the Eighth

Circuit analyzes Minnesota law and concludes that "a Minnesota wrongful death trustee's own

state of citizenship controls for purposes of diversity jurisdiction."  Steinlage, 435 F.3d at 914.

The relevant portion of the Minnesota wrongful death statute reads: "'The recovery in the action

is the amount the jury deems fair and just in reference to the pecuniary loss resulting from the

death, and shall be for the exclusive benefit of the surviving spouse and next of kin, proportionate

to the pecuniary loss severally suffered by the death.'"  Steinlage, 435 F.3d at 915 (quoting Minn.

Stat. Ann. § 573.02)(emphasis in Steinlage, but not in Minn. Stat. Ann. § 573.02).   The Eighth

Circuit explains that, in Minnesota, "[t]he wrongful death trustee is not authorized to obtain a

judgment for the benefit of general creditors who may have claims against the decedent's estate."

Steinlage, 435 F.3d at 915.  Instead, "the wrongful death trustee is expressly authorized only to

obtain judgments on behalf of persons who are separate from the estate of the decedent."  Steinlage,

435 F.3d at 916.  Accordingly, the Eighth Circuit concludes that "we do not believe it is possible

to say that the Minnesota wrongful death statute creates a trustee who represents the estate of the

decedent."  Steinlage, 435 F.3d at 917.

The Eighth Circuit's justification for reaching this conclusion is identical to the Court's

justification for reaching its conclusion in this opinion: an unwillingness "to depart from the text and ignore the express congressional election to limit application to 'legal representative of the estate of the decedent.'"    Steinlage,  435 F.3d at 917 (quoting 28 U.S.C. § 1332(c)(2)).  "[I]t remains necessary," states the Eighth Circuit, "to determine whether representative plaintiffs, variously labeled by [] state legislatures, represent the estates of decedents," because "[t]his is what the federal statute requires."  Steinlage,  435 F.3d at 920 (this District Court's opinion adds brackets).  To conclude that § 1332(c)(2) applies to a representative plaintiff without addressing whether the plaintiff "actually represent[s] the estate," Steinlage,  435 F.3d at 920, would write the word "estate" out of the diversity statute, 28 U.S.C. 1332(c)(2).  Setting "estate" adrift with nothing to do would violate the "'cardinal principle of **s**tatutory construction that . . . if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'"  Rajala v. Gardner, 709 F.3d 1031, 1038 (10th Cir. 2013)(quoting TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001))(alterations in Rajala v. Gardner, but not in TRW Inc. v. Andrews).  The better course is to adhere to Congress' intent, conveyed through the statutory language, and attribute meaning to each word in § 1332(c)(2).

The Court's approach to § 1332(c)(2)'s application in New Mexico is consistent with the Tenth Circuit's textualist approach in Tank, which interprets the statute as providing for a functional test focusing on the mechanisms of the State law at issue.  Tank explains that Congress adds § 1332(c)(2) "to the diversity statute as part of the Judicial improvements Act of 1988," the purpose of which "was to reduce substantially the diversity jurisdiction of the federal courts." Tank, 160 F.3d at 599.  The Tenth Circuit goes on to describe how

> Section 1332(c)(2) . . . was premised on the following 1969 proposal of the American Law Institute:

> An executor, administrator, or any person representing the estate of
> a decedent or appointed pursuant to statute with authority to bring
> an action for wrongful death is deemed to be a citizen only of the
> same state as the decedent . . . The purpose is to prevent either the
> creation or destruction of diversity jurisdiction by the appointment
> of a representative of different citizenship from that of the decedent
> or person represented.

Richard H. Field, Jurisdiction of Federal Courts, reprinted in 46 F.R.D. 141,
143 (1969).

Tank, 160 F.3d at 599.

Congress, however, "did not adopt the ALI proposal wholesale, but instead deleted all references to executors, administrators, and the like in favor of the designation '"legal representative of the estate of a decedent.'" Tank, 160 F.3d at 599 (quoting 28 U.S.C. § 1332(c)(2)). This difference's result is that, "[b]y its plain terms, § 1332(c)(2) is more narrow than the ALI proposal and excludes from its coverage those who are not representing the estate of a decedent, even if the individual is 'appointed pursuant to statute with authority to bring an action for wrongful death.'" Tank, 160 F.3d at 599. The Tenth Circuit concludes that § 1332(c)(2) "therefore is not triggered . . . by the fact that under Kansas law a wrongful death plaintiff acts in a 'representative capacity.'" Tank, 160 F.3d at 599.

In sum, the Tenth Circuit "decline[s] defendants' invitation to ignore the plain statutory language and assume Congress 'merely substituted the single term "legal representative" for the ALI's enumerated exceptions.'" Tank, 160 F.3d at 599 (quoting Green v. Lake of the Woods Cnty., 815 F. Supp. 305, 308 (D. Minn. 1993)). The Tenth Circuit's conclusion binds the Court, but even without the Tenth Circuit's guidance, the Court would analyze § 1332(c)(2)'s language the same way. When interpreting statutes, courts assume that "Congress' intent is expressed correctly in the in the ordinary meaning of the words it employs." St. Charles Inv. Co. v. Comm'r,

232 F.3d 773, 776 (10th Cir. 2000).  Comparing § 1332(c)(2)'s text as codified with the American

Law Institute's proposal bolsters the importance of Congress' decision to adopt a single phrase --

legal representative of the estate of a decedent -- in lieu of a list of phrases -- which includes the

phrase "'any person . . . appointed pursuant to statute with authority to bring an action for wrongful

death.'"  Tank, 160 F.3d at 599 (quoting Richard H. Field, Jurisdiction of Federal Courts, reprinted

in 46 F.R.D. 141, 143 (1969)).  The statutory interpretation flowchart starts at the text.  Overriding

Congress' use of the word "estate" in § 1332(c)(2) and applying the statute to a Wrongful Death

Act personal representative would necessarily involve "speculation as to Congress' intent" about

to whom the new citizenship rule applies and would work backwards from there to the text.

Magwood v. Patterson, 561 U.S. 320, 334 (2010).  Congress replaced the American Law Institute's

list with the word "estate," a word that is neither vague nor ambiguous.  When statutory language

lacks indeterminacy, the courts' job is "to apply faithfully the law Congress has written."  Henson

v. Santander Consumer USA Inc., 582 U.S. 79, 89 (2017).  Accordingly, the Court holds that, here,

Congress' decision to adopt the phrase "legal representative of the estate of a decedent," 28 U.S.C.

1332(c)(2), "is significant," and the Court does not "adopt an interpretation of" § 1332(c)(2) that

"would 'elid[e] the difference between'" someone who represents the decedent's estate versus

someone who merely represents the decedent, Magwood v. Patterson, 561 U.S. at 334 (quoting

Artuz v. Bennett, 531 U.S. 4, 9 (2000)).  Section 1332(c)(2) provides for the former and does not

provide for the latter.

## II.    BECAUSE THE PARTIES ARE COMPLETELY DIVERSE, THE COURT HAS JURISDICTION OVER THIS CASE.

In light of the Court's conclusion that § 1332(c)(2) does not apply to Lopez, the parties'

citizenship stands as follows.  Lopez, one of the Plaintiffs, is a citizen of New Mexico.  See supra,

at 2.  Prieto-Gomez, another Plaintiff, is a citizen of Mexico.  See supra, at 2.  Vega, one of the Defendants, is a citizen of Texas.  See supra, at 2.  Finally, Brady Welding, another Defendant, is a citizen of Oklahoma.  See supra, at 2.  Section 1332(a)(3) provides that district courts have jurisdiction over civil actions, which satisfy the amount-in-controversy requirement, between "citizens of different States and in which citizens or subjects of a foreign state are additional parties." 28 U.S.C. § 1332(a)(3).[7]  This section applies here.  Lopez is a different State's citizen than Vega and Brady Welding. Prieto-Gomez, a citizen of Mexico, is an additional Plaintiff. Rivera's citizenship as the decedent does not come into play, because, as the Court has explained, § 1332(c)(2) does not apply in this case.  Accordingly, the Court has jurisdiction under § 1332(a)(3).

> **IT IS ORDERED** that: the requests in the Motion to Remand to State Court and Memorandum In Support Thereof, filed April 4, 2025 (Doc. 8), are denied.

---

[7]Prieto-Gomez' presence in this litigation, in which she is the only citizen of a foreign country, does not divest the Court of diversity jurisdiction.  As the United States Court of Appeals for the Seventh Circuit explains in Karanzanos v. Madison Two Associates, 147 F.3d 624 (7th Cir. 1998),

> Although a suit between aliens falls outside § 1332's jurisdictional grant, see, e.g., Hodgson v. Bowerbank, 9 U.S. (5 Cranch) 303, 3 L.Ed. 108 (1809) (alien v. alien), jurisdiction exists in a suit between citizens of different states where aliens are additional parties.  See 28 U.S.C. § 1332(a)(3); Hunter v. Shell Oil Co., 198 F.2d 485, 488 (5th Cir.1952) (citizen of state A v. citizen of state B + alien); Allendale Mut. Ins. v. Bull Data Sys., 10 F.3d 425, 427–28 (7th Cir.1993) (citizen of state A + alien v. citizen of state B + alien).

Karazanos v. Madison Two Assocs., 147 F.3d at 626-27.  This case's configuration is similar to the configuration in Allendale Mutual Insurance v. Bull Data Systems, because there are citizens of different States on each side of the litigation, in addition to one foreign citizen.  Accordingly, § 1332(a)(3) controls and gives the Court jurisdiction.

UNITED STATES DISTRICT JUDGE

*Counsel:*

James Daniel Tawney
Mark D. Standridge
Flores, Tawney & Acosta, P.C.
Las Cruces, New Mexico

--and--

Michael C. Ross
Elias Law, P.C.
Albuquerque, New Mexico

     *Attorneys for the Plaintiffs*

Mark J. Riley
Riley Keller Alderete & Gonzales, P.A.
Albuquerque, New Mexico

     *Attorneys for the Defendants*