**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

TODD M. LOPEZ, as Personal Representative
of the Wrongful Death Estate of Anthony
Rivera, Deceased, and ELIZABETH PRIETO-
GOMEZ,

      Plaintiffs,

vs.                                                                                          No. CIV 25-0225 JB/SCY

BENITO VEGA and BRADY WELDING &
MACHINE SHOP INC.,

      Defendants.

<u>**MEMORANDUM OPINION AND ORDER**</u>

**THIS MATTER** comes before the Court on the Plaintiffs' Motion to Reconsider

Memorandum Opinion and Order Denying Motion to Remand to State Court or in the Alternative

Motion and Application to Amend the Opinion and Certify the Order for Interlocutory Appeal

Pursuant to 28 U.S.C. §1292(b) & Memorandum in Support Thereof, filed August 4, 2025

(Doc. 30)("Motion to Reconsider").  The Court holds a hearing on October 14, 2025.  <u>See</u> Clerk's

Minutes at 1, filed October 14, 2025 (Doc. 38); Draft Hearing Transcript of Proceedings at 1 (taken

October 14, 2025)(Court)("2025 Tr.").[1]  The primary issues are: (i) whether the Court should

reconsider its Memorandum Opinion and Order, filed July 24, 2025 (Doc. 29)("MOO"), denying

the Plaintiffs' Motion to Remand to State Court and Memorandum in Support Thereof, filed April,

3, 2025 (Doc. 8)("Motion to Remand"), where the Plaintiffs Todd M. Lopez, as Personal

Representative of the Wrongful Death Estate of Anthony Rivera, Decease, and Elizabeth Prieto-

Gomez (hereinafter the "Plaintiffs") assert the MOO is in clear error, because the Court does not

---

[1] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

use the citizenship of Plaintiffs, decedent, Anthony Rivera, in determining whether diversity exists; and (ii) whether the Court should, in the alternative, amend the MOO and certify the statutory interpretation question of 28 U.S.C. § 1332(c)(2) for interlocutory appeal under 28 U.S.C. § 1292(b), where the Plaintiffs assert there is a substantial ground for difference of opinion.  After reviewing the relevant law and applicable facts, the Court concludes that: (i) the Court will not reconsider the MOO, because the United States Court of Appeals for the Tenth Circuit's binding precedent supports the Court's analysis; and (ii) the Court will not amend the MOO and certify the statutory interpretation question of § 1332(c)(2) for interlocutory appeal under § 1292(b), because certifying the issue to the Supreme Court of New Mexico will disrupt the orderly progression of litigation and for reasons stated at the hearing.  Accordingly, the Court denies the Motion to Reconsider.

### LAW REGARDING MOTIONS TO RECONSIDER

Motions to reconsider in civil cases fall into three categories:

(i) a motion to reconsider filed within [twenty-eight][2] days of the entry of judgment is treated as a motion to alter or amend the judgment under rule 59(e); (ii) a motion to reconsider filed more than [twenty-eight] days after judgment is considered a motion for relief from judgment under rule 60(b); and (iii) a motion to reconsider

---

[2]Former rule 59 provided for a ten-day period after entry of judgment to file motions to reconsider.  In 2009, the rule was amended, extending the filing period to twenty-eight days:

Experience has proved that in many cases it is not possible to prepare a satisfactory post-judgment motion in 10 days, even under the former rule that excluded intermediate Saturdays, Sundays, and legal holidays. These time periods are particularly sensitive because Appellate Rule 4 integrates the time to appeal with a timely motion under these rules. Rather than introduce the prospect of uncertainty in appeal time by amending Rule 6(b) to permit additional time, the former 10-day periods are expanded to 28 days.

Federal Rules of Civil Procedure, Rule 59, Legal Information Institute, https://www.law.cornell.edu/rules/frcp/rule_59.

> any order that is not final is a general motion directed at the Court's inherent power to reopen any interlocutory matter in its discretion. See Price v. Philpot, 420 F.3d 1158, 1167 & n.9 (10th Cir. 2005).

Pedroza v. Lomas Auto Mall, Inc., 258 F.R.D. 453, 462 (D.N.M. 2009)(Browning, J.). See Computerized Thermal Imaging, Inc. v. Bloomberg. L.P., 312 F.3d 1292, 1296 (10th Cir. 2002). While the civil rules are not applicable expressly to criminal cases, the courts have used the principles somewhat interchangeably. See United States v. Christy, 739 F.3d 534, 539-40 (10th Cir. 2014); United States v. Huff, 782 F.3d 1221, 1223-24 (10th Cir. 2015). The case law for the civil side can inform when a motion to consider is appropriate in a criminal case. See United States v. Christy, 739 F.3d at 534, 539-40; United States v. DeLeon, No. CR 15-4268 JB, 2016 WL 7242579, at *29 (D.N.M. October 28, 2016)(Browning, J.).

### 1. Motions to Reconsider Interlocutory Orders.

Considerable confusion exists among the bar regarding the proper standard for a district court to apply when ruling on a motion to reconsider one of its prior "interlocutory" or "interim" orders, i.e., an order that a district court issues while the case is ongoing, as distinguished from a final judgment. This confusion originates from the fact that neither the Federal Rules of Civil Procedure nor the Federal Rules of Criminal Procedure mention motions to reconsider, let alone set forth a specific procedure for filing them or a standard for analyzing them. A loose conflation in terminology in Servants of the Paraclete v. Does, which refers to rule 59(e) motions in civil cases -- motions to alter or amend a judgment -- as "motions to reconsider,"[3] compounds that baseline confusion. 204 F.3d 1005, 1012 (10th Cir. 2000).

---

[3]The Honorable Paul J. Kelly, Jr., United States Circuit Judge for the Tenth Circuit, who authored Servants of the Paraclete v. Does, refers to rule 59(e) motions as "motions to reconsider" several times throughout the opinion. 204 F.3d at 1005. He uses the term "motion to reconsider" as an umbrella term that can encompass three distinct motions: (i) motions to reconsider an

Final judgments are different from interlocutory orders. <u>See</u> Fed. R. Civ. P. 54(a) ("'Judgment' as used in these rules includes a decree and any order from which an appeal lies."). In addition to ripening the case for appeal, <u>see</u> 28 U.S.C. § 1291 ("The courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts . . . ."), the entry of final judgment narrows the district court's formerly plenary jurisdiction over the case in three ways. First, for the first twenty-eight days after the entry of a civil judgment, when the court can entertain motions under rules 50(b), 52(b), 59, and 60, the district court's jurisdiction trumps that of the Court of Appeals. <u>See</u> Fed. R. App. P. 4(a)(4)(B). Even if a party files a notice of appeal, the Court of Appeals will wait until after the district court has ruled on the post-judgment motion to touch the case. <u>See</u> Fed. R. App. P. 4(a)(4)(B). Second, after twenty-eight days, when the court may consider motions under rule 60, if a party has filed a notice of appeal, the Court of Appeals' jurisdiction trumps the district court's, and the district court needs the Court of Appeals' permission even to grant a rule 60 motion.[4] Third, after twenty-eight days, if no party has filed a

_____

interlocutory order, which no set standard governs, save that the district court must decide them "before the entry of . . . judgment," Fed. R. Civ. P. 54(b); (ii) motions to reconsider a judgment made within twenty-eight days of the entry of judgment, which the <u>Servants of the Paraclete v. Does</u> standard governs; and (iii) motions to reconsider a judgment made more than twenty-eight days after the entry of judgment, which rule 60(b) governs. There is arguably a fourth standard for motions to reconsider filed more than a year after the entry of judgment, as three of the rule 60(b) grounds for relief expire at that point.

     Much confusion could be avoided by using the term "motion to reconsider" exclusively to refer to the first category, "motion to amend or alter the judgment" exclusively to refer to the second category, and "motion for relief from judgment" exclusively to refer to the third category (and arguable fourth category). These are the terms that the Federal Rules of Civil Procedure -- and other Courts of Appeals -- use to describe (ii) and (iii). The Court agrees with Judge Kelly -- and all he likely meant by using motion to reconsider as an umbrella term is -- that, if a party submits a motion captioned as a "motion to reconsider" after an entry of final judgment, the court should evaluate it under rule 59(e) or 60(b), as appropriate, rather than rejecting it as untimely or inappropriate.

     [4]Rule 60(a), which allows the district court to correct clerical errors, provides that, "after

notice of appeal, district courts may consider motions under rule 60.  See Fed. R. App. P. 4(a)(4)(A)(vi).

Final judgments implicate two important concerns militating against giving district courts free reign to reconsider their judgments.  First, when a case is not appealed, there is an interest in finality.  The parties and the lawyers expect to go home, quit obsessing about the dispute, and put the case behind them, and the final judgment -- especially once the twenty-eight day window of robust district court review and the thirty-day window of appeal have both closed -- is the disposition upon which they are entitled to rely.  Second, when a party appeals a case, there is the need for a clean jurisdictional handoff from the district court to the Court of Appeals.  "[A] federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously," as doing so produces a "danger [that] a district court and a court of appeals w[ill] be simultaneously analyzing the same judgment."  Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58-59 (1982).

---

an appeal has been docketed in the appellate court and while it is pending, such a mistake may be corrected only with the appellate court's leave."  Fed. R. Civ. P. 60(a).  Rule 60(b), which provides for the correction of substantive legal errors, has an interestingly one-sided application when the case is up on appeal: "[A] notice of appeal does not divest a district court of jurisdiction to consider a Rule 60(b) motion, although it prevents a district court from granting such a motion unless it notifies this court of its intention to grant the motion upon proper remand."  West v. Ortiz, No. CIV 06-1192, 2007 WL 706924, at *5 n.5 (10th Cir. March 9, 2007)(unpublished)(Broby, J.)(citing Allison v. Bank One-Denver, 289 F.3d 1223, 1243 (10th Cir. 2002)); Aldrich Enters., Inc. v. United States, 938 F.2d 1134, 1143 (10th Cir. 1991)).  In other words, "a district court does have the authority 'to consider on the merits and deny a 60(b) motion after a notice of appeal, because the district court's action is in furtherance of the appeal,'" but the district court does not have the authority to grant a rule 60(b) motion without first asking the Court of Appeals to remand the case. United States v. Edmonson, 928 F. Supp. 1052, 1053 (D. Kan. 1996)(Crow, J.)(emphasis in original)(quoting Winchester v. U.S. Att'y for the S. Dist. of Tex., 68 F.3d 947, 949 (5th Cir. 1995)).

The Court of Appeals needs a fixed record on which to base its decisions -- especially given the collaborative nature of appellate decision-making -- and working with a fixed record requires getting some elbow room from the district court's continued interference with the case. The "touchstone document" for this jurisdictional handoff is the notice of appeal and not the final judgment, Griggs v. Provident Consumer Discount Co., 459 U.S. at 58 ("The filing of a notice of appeal is an event of jurisdictional significance -- it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."); Garcia v. Burlington N. R.R. Co., 818 F.2d 713, 721 (10th Cir. 1987)("Filing a timely notice of appeal pursuant to Fed. R. App. P. 3 transfers the matter from the district court to the court of appeals. The district court is thus divested of jurisdiction. Any subsequent action by it is null and void."); Kirtland v. J. Ray McDermott & Co., 568 F.2d 1166, 1170 (5th Cir. 1978)("[I]t is the filing of the appeal, not the entering of a final judgment, that divests the district court of jurisdiction."), but, because the final judgment starts the parties' thirty-day clock for filing a timely notice of appeal, the Federal Rules of Civil Procedure and the Tenth Circuit have chosen to curtail the district court's jurisdiction over the case in the roughly month-long period of potentially overlapping trial- and appellate-court jurisdiction that immediately follows the entry of final judgment, see Servants of the Paraclete v. Does, 204 F.3d at 1009 (noting that post-final judgment motions at the district court level are "not intended to be a substitute for direct appeal").

Rather than suddenly divesting the district court of all jurisdiction over the case -- potentially resulting in the district court being unable to rectify easily fixable problems with the final judgment before the case goes to the Tenth Circuit or even requiring appeal of a case that might otherwise not need to be appealed -- the Federal Rules of Civil Procedure set forth a jurisdiction phased de-escalation process, wherein the district court goes from pre-final judgment

plenary jurisdiction, to limited review for the first twenty-eight days post-final judgment, and, finally, to solely rule 60 review after twenty-eight days. In defining the "limited review" that rule 59(e) allows a district court to conduct in the twenty-eight-day flux period, the Tenth Circuit incorporates traditional law-of-the-case grounds -- the same grounds that inform whether a court should depart from an appellate court's prior decision in the same case -- into rule 59(e). See United States v. Alvarez, 142 F.3d 1243, 1247 (10th Cir. 1998)(departing from the law-of-the-case doctrine in three exceptionally narrow circumstances: "(1) when the evidence in a subsequent trial is substantially different; (2) when controlling authority has subsequently made a contrary decision of the law applicable to such issues; or (3) when the decision was clearly erroneous and would work a manifest injustice"); Servants of the Paraclete v. Does, 204 F.3d at 1012 (incorporating those grounds into rule 59(e)).

Neither of these concerns -- finality nor jurisdictional overlap -- is implicated when a district court reconsiders one of its own interlocutory orders. The Federal Rules do not mention specifically motions to reconsider interlocutory orders, but rule 54(b) of the Federal Rules of Civil Procedure makes the following open-ended proclamation about their mutability:

> When an action presents more than one claim for relief -- whether as a claim, counterclaim, crossclaim, or third-party claim -- or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b)(emphases added). Rule 54(b) thus (i) provides that a district court freely can reconsider its prior rulings; and (ii) puts no limit or governing standard on the district court's ability to reconsider, other than that it must do so "before the entry of judgment." Fed. R. Civ. P. 54(b).

See e.g., Anderson Living Trust v. ConocoPhillips, No. CIV12-0039 JB/SCY, 2025 WL 950473 at *58-70 (D.N.M. March 28, 2025)(Browning, J.)(reconsidering class certification of oil-and-gas royalty underpayment claims under rule 54(b), instead of under rule 59(e) or under rule 60, because the original order denying class certification is a interlocutory order and not a final judgment).

The Tenth Circuit has not cabined district courts' discretion beyond what rule 54(b) provides: "[D]istrict courts generally remain free to reconsider their earlier interlocutory orders." Been v. O.K. Indus., 495 F.3d 1217, 1225 (10th Cir. 2007). In the Tenth Circuit, "law of the case doctrine has no bearing on the revisiting of interlocutory orders, even when a case has been reassigned from one judge to another." Rimbert v. Eli Lilly & Co., 647 F.3d 1247, 1252 (10th Cir. 2011)(citing Been v. O.K. Indus., Inc., 495 F.3d at 1225). In this context, "the doctrine is merely a 'presumption, one whose strength varies with the circumstances.'" Been v. O.K. Indus., Inc., 495 F.3d at 1225 (quoting Avitia v. Metro. Club of Chi., Inc., 49 F.3d 1219, 1227 (7th Cir. 1995)). In short, a district court can use whatever standard it wants to review a motion to reconsider an interlocutory order. See Austin v. Kroger Tex., L.P., 864 F.3d 326, 336 (5th Cir. 2017)("The trial court is free to consider and reverse its decision for any reason it deems sufficient."). It can review the earlier ruling de novo and essentially reanalyze the earlier motion from scratch, it can review the ruling de novo but limit its review, it can require parties to establish one of the law-of-the-case grounds, or it can refuse to entertain motions to reconsider altogether.

### 2.    Motions to Reconsider Interlocutory Orders -- Three Factor Analysis.

The best approach, in the Court's eyes, is to analyze motions to reconsider differently depending on three factors. Cf. Been v. O.K. Indus., Inc., 495 F.3d at 1225 ("[T]he doctrine is merely a 'presumption, one whose strength varies with the circumstances.'"). First, the Court should restrict its review of a motion to reconsider a prior ruling in proportion to how thoroughly

the earlier ruling addresses the specific findings or conclusions that the motion to reconsider challenges. How "thoroughly" a point is addressed depends both on the amount of time and energy the Court spent on it, and on the amount of time and energy the parties spent on it -- in briefing and orally arguing the issue, but especially if they develop evidence on the issue. A movant for reconsideration thus faces a steeper uphill challenge when the prior ruling is on a criminal suppression motion, class certification motion, or preliminary injunction,[5] than when the prior ruling is, e.g., a short discovery ruling. The Court should also look, not to the prior ruling's overall thoroughness, but to the thoroughness with which the Court addresses the exact point or points that the motion to reconsider challenges. A movant for reconsideration thus faces an easier task when he or she files a targeted, narrow-in-scope motion asking the Court to reconsider a small, discrete portion of its prior ruling than when he or she files a broad motion to reconsider that rehashes the same arguments from the first motion, and essentially asks the Court to grant the movant a mulligan on its earlier failure to present persuasive argument and evidence.

---

[5]The Court typically makes findings of fact and conclusions of law in ruling on these motions. At first glance, it appears that the Federal Rules of Civil Procedure set forth additional standards -- beyond that which applies to other interlocutory orders -- for amending findings of fact and conclusions of law: "Amended or Additional Findings. On a party's motion filed no later than 28 days after the entry of judgment, the court may amend its findings -- or make additional findings -- and may amend the judgment accordingly. The motion may accompany a motion for a new trial under Rule 59.

Fed. R. Civ. P. 52(b)(bold in original). This rule appears to limit motions to reconsider orders with findings of fact and conclusions of law to 28 days. The rule's use of the term "entry of judgment," its reference to rule 59, and its adoption of the same time period that applies to motions to alter or amend a judgment, all lead the Court to conclude, however, that rule 52(b) -- and its 28-day time limit -- does not apply to interlocutory orders. The time limit applies only to findings of fact and conclusions of law supporting a case-ending judgment -- such as those entered after a bench trial -- and to those giving rise to an interlocutory appeal that, if filed, divests the district court of its jurisdiction -- such as those entered in support of a preliminary injunction.

Second, the Court should consider the case's overall progress and posture, the motion for reconsideration's timeliness relative to the ruling it challenges, and any direct evidence that the parties may produce, and use those factors to assess the degree of reasonable reliance the opposing party has placed in the Court's prior ruling. See 18B Wright & Miller, Federal Practice and Procedure, § 4478.1 (3d ed. 2024 Update)("Stability becomes increasingly important as the proceeding nears final disposition . . . .  Reopening should be permitted, however, only on terms that protect against reliance on the earlier ruling.").  For example, if a defendant (i) spends tens of thousands of dollars removing legacy computer hardware from long-term storage; then (ii) obtains a protective order in which the Court decides that the defendant need not produce the hardware in discovery; then (iii) returns the hardware to long-term storage, sustaining thousands more in expenses; and (iv) several months pass, then the plaintiffs should face a higher burden in moving the Court to reconsider its prior ruling that they face in fighting the motion for protective order the first time. s increasingly important a

Third, the Court should consider the Servants of the Paraclete v. Does grounds.  The Court should be more inclined to grant motions for reconsideration if the movant presents: (i) new controlling authority -- especially if the new authority overrules prior law or sets forth an entirely new analytical framework; (ii) new evidence -- especially if the movant has a good reason why the evidence was not presented the first time around; or (iii) a clear indication -- one that manifests itself without the need for in-depth analysis or review of the facts -- that the Court erred.  See, e.g., Anderson Living Trust v. ConocoPhillips, No. CIV12-0039 JB/SCY, 2025 WL 950473, at *59 (D.N.M. March 28, 2025)(Browning, J.)(concluding that the Court makes no legal error on the oil-and-gas royalty underpayment claim in its order denying class certification); id. at 2025 WL 950473, at *65 (granting reconsideration of the rule 23(a)(2) commonality requirement for class

certification, because the Court only briefly addresses commonality in its order denying class certification and has not analyzed the issue fully).

These three factors should influence the degree to which the Court restricts its review of a prior ruling, but they do not necessarily mean that the Court always should apply a deferential standard of review. The Court should pause before applying a standard of review to its own interlocutory orders that is more deferential than the standard that the Court of Appeals will apply to it, unless the Court concludes that the alleged error in the prior ruling is harmless, or the party moving for reconsideration waived its right to appeal the alleged error by not raising the appropriate argument. Even in circumstances where the Court concludes that it is insulated from reversal on appeal, there are principled reasons for applying a de novo standard. After all, if the Court is wrong in its earlier decision, then, generally speaking, it is unjust to maintain that result -- although the Court should weigh this injustice against any injustice that would result from upending the parties' reliance on the earlier ruling, which is the balancing test that the three factors above represent.

What the Court means by restricting its review is less about applying a deferential standard of review -- although that may be appropriate in some circumstances -- and more about reducing (i) the depth of the Court's analysis the second time around -- thus conserving judicial resources; and (ii) the impositions that relitigation of the prior ruling will impose on the party opposing the motion for reconsideration. The Court should consider the time and expense that the party opposing reconsideration spends in winning the earlier ruling and should try to prevent that party from having to bear the same impositions again. Even if the Court ultimately analyzes a motion to reconsider under the same standard that it analyzes the motion which produces the earlier ruling, it should analyze the motion in a different way -- one focused on reducing the litigation burdens

of the party opposing reconsideration. For example, when a party moves the Court for a preliminary injunction, standard practice is that the Court holds an evidentiary hearing as a matter of course, regardless whether it looks as if the party has a good chance of prevailing. If the Court denies the injunction and the party moves for reconsideration, the party should not be entitled to the presumption of an evidentiary hearing merely because he or she receives that presumption the first time that the Court considers the motion.

In light of these statements, it is best to characterize the increased burden that a movant for reconsideration faces as one of production and not of persuasion. The Court analyzes motions to reconsider by picking up where it left off in the prior ruling and not by starting anew. Parties opposing reconsideration also can start where the Court finishes, and they may stand on whatever evidence and argument they use to win the earlier ruling. Movants for reconsideration, on the other hand, carry the full burden of production: they must persuade the Court, using only the evidence and argument they put before it, that it should change its prior ruling; they must do all of the legwork, and not rely on the Court to do any supplemental fact-finding or legal research; and they convincingly must refute both the counterarguments and evidence that the opposing party uses to win the prior ruling, and any new arguments and evidence that the opposing party produces while opposing the motion to reconsider. Unlike the motion that produces the prior ruling, a motion to reconsider is not -- and is not supposed to be -- a fair fight procedurally. The deck is stacked against a movant for reconsideration, and, if such a movant hopes to prevail, he or she must have not only a winning legal position, but the work ethic and tenacity to lead single-handedly the Court to his or her way of thinking.

## ANALYSIS

The Court considers but does not otherwise grant the Plaintiffs' Motion to Reconsider,

because the arguments they raise do not alter the Court's analysis of the Wrongful Death Act, N.M.S.A. § 41-2-3 ("WDA"), or its interpretation of Tank v. Chronister, 160 F.3d 597 (10th Cir. 1998)("Tank").  As a preliminary matter, the Court recognizes that the MOO is an interlocutory order and does not base its decision solely on Servants of Paraclete v. Does.  See Plaintiffs' Reply to Defendants' Response in Opposition to Motion to Reconsider Memorandum Opinion and Order Denying Motion to Remand to State Court or in the Alternative Motion and Application to Amend the Opinion and Certify the Order for Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b) at 2, filed September 2, 2025 (Doc. 34)("Plaintiffs' Reply").  Accordingly, the Motion to Reconsider falls within the Court's inherent authority to review and revise interlocutory rulings at any time before the entry of final judgment.  See Fed. R. Civ. P. 54(b).  The Court exercises that authority, however, within a structured framework designed to preserve both the accuracy and the stability of judicial decisions.  See, e.g., United States v. Loera, 182 F. Supp. 3d 1173 (D.N.M. 2016)(Browning, J.)("Loera"), aff'd, 923 F.3d 907 (10th Cir. 2019).

## I.    THE PLAINTIFFS DO NOT SATISFY THE INITIAL BURDEN THAT THE COURT REQUIRES TO EXERCISE ITS DISCRETION TO RECONSIDER ANY INTERLOCUTORY ORDER.

When evaluating motions to reconsider interlocutory rulings, the Court considers three guiding principles.  See Been v. O.K. Indus., Inc., 495 F.3d at 1225.  First, the Court evaluates the thoroughness with which the prior ruling addresses the issue that the movant now challenges.  See Loera, 182 F. Supp. 3d at 1219.  When a ruling is the product of substantial briefing, careful statutory analysis, and close examination of precedent, the movant faces a steeper uphill burden in seeking reconsideration.  See Loera, 182 F. Supp. 3d at 1219.  Second, the Court considers the posture of the case, the timeliness of the motion, and the degree to which the opposing party reasonably relies on the Court's prior ruling.  See Loera, 182 F. Supp. 3d at 1219-20.  Third, the

Court considers whether the motion identifies grounds from Servants of Paraclete v. Does for reconsideration, such as new controlling authority, newly discovered evidence, or a clear error in the Court's reasoning. See Loera, 182 F. Supp. 3d at 1220. These considerations reflect the procedural reality that a motion for reconsideration is not a second opportunity to relitigate issues the Court already considers and resolves. Rather, the movant bears the full burden of production and must demonstrate why the Court should depart from its earlier ruling. See Loera, 182 F. Supp. 3d at 1208.

Reviewing the Motion to Reconsider within this framework, the Plaintiffs do not make the showing necessary to justify reconsideration. The Plaintiffs advance several justifications for the Court exercising its discretionary authority to revisit the MOO in both the Motion to Reconsider and the in Plaintiffs' Reply. See Plaintiffs' Reply at 1-12. The Plaintiffs make procedural and substantive arguments, including: (i) the case's overall progress and posture and the motion's timeliness relative to the ruling it challenges, see Plaintiffs' Reply at 1-3; (ii) the degree of reasonable reliance the opposing party places on the Court's prior ruling, see Plaintiffs' Reply at 3-4; (iii) the Court's alleged error in its definitional use of "estate" and "legal representative," Plaintiffs' Reply at 4-7; and (iv) the Court's alleged error in its interpretation of Tank v. Chronister, 160 F.3d 597 (10th Cir. 1998), see Plaintiffs' Reply at 8-10. Even considering these arguments collectively, the Plaintiffs do not carry the burden that a movant for reconsideration must satisfy.

First, although the Court acknowledges that the timing of the Motion to Reconsider weighs in the Plaintiffs' favor, timeliness is only one factor in the Court's reconsideration analysis. The remaining considerations weigh against reconsideration. As to the first consideration, the MOO is the product of careful textual analysis and a thorough review of the governing case law. As discussed at the October 14, 2025, hearing, the Court's initial impression aligns with the Plaintiffs'

position. 2025 Tr. at 3:23-4:4 (Court) ("Y'all may remember when we had the hearing, I left here thinking that I was probably going to grant motion to remand, and I had to convince myself to the contrary that the motion should be denied."). After further examination of the statutory language, relevant precedent, and the jurisdictional framework at issue, however, the Court concludes that subject-matter jurisdiction is appropriate. The Court understands the Plaintiffs' arguments and recognizes that their position has an intuitive appeal. Binding precedent and the statutory structure, however, do not support those intuitions.

Neither does the third reconsideration factor favor the Plaintiffs. The Motion to Reconsider identifies neither new controlling authority nor newly discovered evidence. The Plaintiffs concede that fact and instead contend that there is clear indication that the Court errors. See Motion to Reconsider at 3 (citing, as justifications, only clear error or to prevent manifest injustice). The Plaintiffs' arguments, however, undermine that position. In the same motion, the Plaintiffs request certification for interlocutory appeal, arguing that the issues in clear error present a substantial ground for difference of opinion. See Motion to Reconsider at 22. A claim that reasonable jurists may disagree with the Court's analysis is difficult to reconcile with the assertion that the Court's error "manifests itself without the need for in-depth analysis or review of the facts." XTO Energy, Inc. v. ATD, LLC, 189 F. Supp. 3d 1174, 1192 (D.N.M. 2016)(Browning, J.).

## II. THE PLAINTIFFS' SUBSTANTIVE ARGUMENTS DO NOT PERSUADE THE COURT TO CHANGE ITS DECISION ON THE MERITS.

The Court next turns to the Plaintiffs' specific legal arguments regarding the definitions of "estate" and "legal representative," Plaintiffs' Response at 4-7, as well as the Court's interpretation of Tank, Plaintiffs' Response at 8-10. The Court considers and rejects these arguments in the MOO, even though the Plaintiffs do not emphasize them as the primary focus of their briefing.

See 2025 Tr. at 18:7-11 (Standridge)(stating the Plaintiffs did not "have the opportunity to brief [the definition of estate] because that wasn't the basis of the defendant's opposition"). See MOO at 23-26. The Plaintiffs' "estate" and "legal representative" arguments result in a similar outcome as that in Brown v. Mahdi, 482 F. Supp. 2d 1300 (D.N.M. 2007)(Johnson, J.)("Brown"). In Brown, the Honorable William Johnson, United States District Judge for the United States District of New Mexico considers the question before the Court, concluding § 1332(c)(2) applies to the WDA's personal representatives regardless of whether the decedent has heirs. See MO at 31. The Plaintiffs' definitional arguments result in the same outcome by suggesting, regardless of whether the decedent has heirs, the WDA's personal representative functions as "depository estate." Plaintiffs' Reply at 6. The Plaintiffs' arguments do not account fully for the Tenth Circuit's guidance that "it is important to look at who recovers under wrongful death statutes before applying § 1332(c)(2)." MOO at 28-29.

The Tenth Circuit's guidance of looking to who recovers under wrongful-death statutes undercuts the Plaintiffs' argument that New Mexico's statute operates as a hybrid statute and that therefore the Court should treat the WDA differently from the way the Tenth Circuit treats the wrongful-death statute at issue in Tank. See Plaintiffs' Reply at 8 (stating that the WDA is a "hybrid statute" compared with the "wrongful death only" statute in Tank). The Court acknowledge the differences between the WDA and Kansas' statute, stating that the "difference does not undermine the important similarity between the two statutes . . . [namely] that, in New Mexico, personal representatives are 'merely nominal parties who act for the benefit of the statutory beneficiaries.'" MOO at 28 (quoting Lopez v. Presbyterian Healthcare Servs., 2025-NMSC-031, ¶ 29, 578 P.3d 1089, 1098). The Plaintiffs do not engage with this point. Neither their definitional arguments nor the distinctions they attempt to draw between the WDA and Tank

address the fact that the statutory beneficiaries are the parties who ultimately benefit from this suit.

For these reasons, and for those stated at the hearing and in the MOO, the Court denies the Motion

to Reconsider.

### III.   THE COURT DENIES THE PLAINTIFFS' REQUEST FOR A CERTFICATION FOR INTERLOCUTORY APPEAL.

Congress has given the Courts of Appeals "jurisdiction of appeals from all final decisions

of the district courts of the United States." 28 U.S.C. § 1291. The restriction of appellate review

to final decisions "prevents the debilitating effect on judicial administration caused by piecemeal

appellate disposition of what is, in practical consequence, but a single controversy." Eisen v.

Carlisle & Jacquelin, 417 U.S. 156, 170 (1974). Various prescriptions for appeal from

interlocutory rulings supplement the general rule requiring final decisions. In 1958, Congress

enacted 28 U.S.C. § 1292(b), which empowers the district courts to certify certain pivotal and

debatable decisions for immediate review:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: Provided, however, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

28 U.S.C. § 1292(b). The Supreme Court understands the procedure that 28 U.S.C. § 1292(b)

establishes to "confer on district courts first line discretion to allow interlocutory appeals." Swint

v. Chambers Cty. Comm'n, 514 U.S. 35, 47 (1995).

The Plaintiffs do not demonstrate that a substantial ground for difference of opinion exists

here. The Plaintiffs principally argue that the question is "'a close issue,'" Motion to Reconsider

at 23 (quoting <u>Brown</u>, 482 F. Supp. 2d at 1300), and that "several judges in this District" construe the WDA differently.    The Court agrees that the question requires careful analysis.    That observation, however, does not satisfy § 1292(b)'s standard.  The Plaintiffs do not identify a Court of Appeals split, nor do they demonstrate that the Court's ruling conflicts with any Court of Appeals decisions.  Instead, the Plaintiffs rely on the fact that some district courts interpret other wrongful-death statutes differently.  <u>See</u> Motion to Reconsider at 23 (stating that "federal courts construing other states' wrongful death statutes . . . have come out the other way").  That showing is insufficient.  The presence of competing district court decisions may indicate that the issue is debatable, but § 1292(b) requires more than the possibility that reasonable judges might disagree.

Moreover, the Court regularly resolves questions of subject-matter jurisdiction.    That another court might reach a different conclusion does not mean that certification for interlocutory appeal is appropriate.  If that were the standard, nearly every jurisdictional ruling could go to the Tenth Circuit, resulting in the inefficient "piecemeal" litigation that Congress wants to avoid. <u>Eisen v. Carlisle & Jacquelin</u>, 417 U.S. at 170.  Section 1292(b) does not contemplate such routine interlocutory review.  Rather, interlocutory appeals are for exceptional circumstances in which immediate appellate guidance is necessary.  For these reasons, and for the reasons that the Court states at the hearing, the Court denies the motion for certification of interlocutory appeal.

**IT IS ORDERED** that the request in the Plaintiffs' Motion to Reconsider Memorandum Opinion and Order Denying Motion to Remand to State Court or in the Alternative Motion and Application to Amend the Opinion and Certify the Order for Interlocutory Appeal Pursuant to 28 U.S.C. §1292(b) & Memorandum in Support Thereof, filed Augst 4, 2025 (Doc. 30), are denied.

UNITED STATES DISTRICT JUDGE

*Counsel:*

Michael C. Ross
Elias Law, P.C.
Albuquerque, New Mexico

-- and –

James Daniel Tawney
Mark D. Standridge
Flores, Tawney & Acosta, P.C.
Las Cruces, New Mexico

    *Attorneys for the Plaintiffs*

Mark J. Riley
Riley Keller Alderete & Gonzales, P.A.
Albuquerque, New Mexico

    *Attorneys for the Defendants*